**UNITED STATES of America,
Plaintiff,**

**v.**

**Samuel Joseph MELVILLE, John David Hughey, Jane Lauren Alpert, Patricia Elizabeth Swinton, Defendants.**

**No. 70 Cr. 28.**

United States District Court
S. D. New York.

Jan. 22, 1970.

See also D.C., 309 F.Supp. 822, 829.

Lefcourt, Garfinkel, Crain, Cohn, Sandler & Lefcourt, New York City, for defendant Melville; by William E. Crain, New York City, of counsel.

Whitney North Seymour, Jr., U. S. Atty., S. D. New York, for plaintiff; by John H. Doyle, III, New York City, of counsel.

## OPINION

POLLACK, District Judge.

The defendant, Melville, has been charged in a 23 Count superseding indictment with conspiracy, violations of the law against destruction of federal property, obstruction and interference with the national defense of the United States and violations of the Gun Control Act of 1968 and the National Firearms Act. In brief, the government claims that the defendant bombed and was about to engage in bombing various federal properties. Without giving up any aspect of defendant's presumption of innocence, it has been expressly assumed in these hearings by defendant's counsel that defendant committed the acts of bombing and so confessed to the FBI and that the government has a strong case.

Bail was set by this Court on the original indictment in the amount of $100,000 together with certain nonfinancial terms and on appeal, this Court's order was unanimously affirmed. United States v. Melville, 417 F.2d 1002 (2nd Cir. 1970). This Court's requirement was that "the defendant post cash bail or a bond with sufficient and proper and responsible sureties in the proper sense of that term in the sum of $100,000" (Opin. January 3, 1970).

On January 15, 1970 the defendant pleaded to the superseding indictment and bail was set in respect of that indictment as follows:

"It is the judgment of the Court that this defendant post cash bail or a bond with sufficient and proper responsible sureties in the proper sense of that term in the sum of $100,000;

That as further conditions of the bail that he should be required on each day to return to the custody of the United States Marshal, or other place of detention fixed by the Attorney General or his representatives, at 6 P.M. to remain in custody until 9 A.M. of each succeeding morning.

His travel shall be restricted to the Borough of Manhattan and he is to be prohibited from entering any facilities of a general nature leading out of the area such as general railway stations, airports, etc. He may to the extent that he requires, and in comporting himself properly, make use of the bus and subway facilities, bearing in mind that they do have a terminus outside of Manhattan.

If there is any issue with respect to the justification of the sureties in the proper and responsible sense, that matter is to be determined in advance of any release to be executed by the United States Attorney."

The defendant has proffered a corporate surety appearance bond to be issued by Stuyvesant Insurance Company of New York in the face amount of $100,000. This company is on the list of accredited companies on file with the Clerk of this Court. The surety company has required collateral for its undertaking valued at approximately $60,000. The collateral consists of certain shares of stock, savings bank books, cash and possibly other items. The bondsman appeared on the witness stand but did not have with him the list of collateral nor could he recall, he said, the identity of any of the several persons who supplied the same. At an evidentiary hearing held on January 3, 1970, six persons did appear and gave testimony as to the contributions to the collateral which they had made. These sources accounted for about one-third of the total. Two (or possibly more) persons are said to have provided the balance of the collateral, but defendant refuses to identify them by name or produce them for examination under oath by the government in respect of matters relevant on the consideration of bail.

■ A surety company is useful for purposes of bail where, as here, the caliber of the security available is not in suitable form to be used as bail. It is not however, a device to assure the anonymity of those who make up the sources of the bail; and where those sources are questioned, the Court is entitled to have a moral as well as a financial assurance therefrom of the defendant's appearance in Court when required.

This defendant has absolutely no credible community roots. One alleged co-conspirator has disappeared and cannot be found. The incentive of the defendant not to appear if released is very strong in this case. The countervailing incentives have not been credibly demonstrated. The defendant produced a witness who offered to assume supervision of the defendant to aid in assurance of defendant's appearance. His testimony, I treat with reserve.

■ As the Court has previously observed, the function of bail is not to purchase freedom for the defendant but to provide assurance of his reappearance after release on bail; a guarantee of the obligation of the defendant to appear. The bail is not for the purpose of pro-

viding funds to the government to seek the defendant should he go underground or flee the jurisdiction. Bail is intended as a catalyst to aid the appearance of the defendant when wanted.

■ For this purpose it becomes appropriate to identify the sources of bail and ascertain their purpose and satisfy the Court that there is a moral assurance for reappearance to be gained by acceptance of funds emanating from such sources.

The considerations which will satisfy the moral as well as the financial assurances will necessarily vary from case to case and depend on the particular facts and circumstances developed in an evidentiary hearing where that is demanded by the government. Parenthetically, in this case it was the defendant who initiated the evidentiary hearing but he has stopped short of full disclosure by refusing to disclose the identity and to furnish the appearance of the principal sources of the bail. The argument is that disclosure will have a chilling effect on would-be sources of bail.

In United States v. Nebbia, 357 F.2d 303, 304 (2d Cir. 1966), the bail offered was a certified check, yet the Court required a disclosure of the source of the funds on which the check was drawn. The Court said:

"The giving of security is not the full measure of the bail's obligation. It is not the sum of the bail bond that society asks for, but rather the presence of the defendant * * *. If the court lacks confidence in the surety's purpose or ability to secure the appearance of a bailed defendant, it may refuse its approval of a bond even though the financial standing of the bail is beyond question." (citations omitted).

The defendant has attempted to distinguish Nebbia as a case dealing with an individual not a surety company posting bail. The case does not rest on any such narrow basis.

Nebbia sets the rule for this District and sets the duty of District Judges to look into the sources of bail proffered. The Court would have to ignore the doctrine of Nebbia to cloak "donors" (so-called herein) with secrecy and anonymity and to fail to require that their evidence be taken, albeit under reasonable safeguards.

On the argument, defendant's counsel literally conceded that bail should not be taken from illegitimate sources or criminal sources since these afford no moral assurance of reappearance of the defendant after release. Certainly a source identified as a means to facilitate or one sympathetic to escape would be illegitimate—indeed, such sources would tend to assure *against* defendant's reappearance. However, the defendant's counsel contends that a corporate surety by command of the Rules of Criminal Procedure insulates such sources from disclosure because the rule as he reads it commands the Judge not to look beyond the surety company.

The legal authorities cited to the Court for defendant's contention are wide of the mark.

Defendant argues that Concord Cas. & Surety Co. v. United States, 69 F.2d 78, 81, 91 A.L.R. 885 (2d Cir. 1934) and United States v. Field, 190 F.2d 554 (2d Cir. 1951), aff'd, 193 F.2d 92, 93, 99 (2d Cir. 1951) allowed challenges of corporate sureties, but only for their failure to perform their obligations. Defendant argues further that *Concord* stands for the proposition that the bond of a corporate surety can in no way be challenged unless the company is charged with wrongdoing.

In *Concord* the District Judge had entered an order restraining a surety company from acting as a surety in the Southern District of New York. The Court found that the company had acceded in and facilitated the practice of allowing persons to impersonate defendants and serve short prison terms. The Court of Appeals for the Second Circuit reversed the District Judge on jurisdictional grounds not relevant here.

The Appellate Court observed that not only is there a concern for the financial risk in accepting an undertaking but also for a "moral risk" because

> [w]hen a defendant is called upon to pay his obligation to society, it is not the sum of the bail bond that society asks for, but rather the presence of the defendant for imprisonment. 69 F.2d at 81.

Consequently, "[i]f the surety company should so conduct its business as to lose the confidence of the court or a judge thereof, the judge to whom an undertaking is submitted in any case for approval could refuse to approve it", *id.*, and the "judicial act of approval of a bond is not mandatory under section 6 [6 U.S.C. § 6], but the statute calls for the exercise of a wise judicial discretion", *id.*

It is clear that *Concord* does not stand for the proposition urged by defendant. The case does not deal with the propriety of inquiring into the sources of the collateral posted to secure the surety bond and makes no reference to this question. If anything, the rationale of the Court in *Concord,* though applied in that case to the integrity of the surety company itself, supports the conclusion that an inquiry into the moral risk factor is proper and that the Court's approval of given security is discretionary.

Indeed, *Concord* is cited in Nebbia v. United States, 357 F.2d 303, 304 (2d Cir. 1966), which as stated previously, held it to be proper to conduct a non-financial inquiry into the source of a certified check.

█ This Court holds that Rule 46(e) does not define the scope of the Court's discretion in determining the validity of the moral and financial purposes and intended use of the bail. The rule requires every surety, except the corporate surety which is approved as provided by law, to justify the property by which he proposes to justify. This has nothing to do with the purposes for which bail is required as outlined above. *Cf.* 8A J. Moore, Federal Practice ¶ 46.12, at 46–52–46–53 (2d ed. 1969), and nothing in the Bail Reform Act of 1966 supports the contention of the defendant that the Court cannot inquire into the identity and purposes of the sources of bail. Indeed, the circumstances of release are expressly left to the Court's discretion which may "impose any other condition deemed reasonably necessary to assure appearance as required". 18 U.S.C. § 3146(a) (5).

It would be a mischievous doctrine if the government were incapacitated from establishing that the design and purpose of the sources of bail was to use a corporate front in order to "free the defendant at any cost" [words of an ally of the defendant published in a newspaper]. There is no way in which the Court can assess the impact and influence of a bail bond on the defendant's proclivity to flee without some detailed knowledge of those posting the collateral.

█ The spirit of the Bail Reform Act is to favor nonfinancial conditions of bail. Where, however, the defendant lacks means and roots, it becomes appropriate to be as reasonably assured as is practical that the bail givers are not intending merely to free the defendant and have no real interest in his appearance.

█ It has been argued that the resulting situation here may be as if "no bail" has been set. It cannot be that in every case bail must be set at an amount which the defendant can raise, if the Court is of the view that that amount is insufficient or that the sources of bail fail to provide the moral responsibility and the proper purposes to assure the defendant's presence.

To post bail for another is a perfectly legal act, one which no honestly motivated, responsible person, should be ashamed to disclose. Such a person does not generally need to hide his actions or convictions if indeed they are moral, genuine and not inimical to the interests of justice. He or she is no different from a character witness at a trial. Surely such a witness would not be heard

to say that his identity should be kept concealed from the public. The demand for anonymity leads to a suggestion that the donor is engaged in something furtive, stealthy and suspect in motive and possibly illegal. Certainly, it does not enhance assurance of the presence of the defendant.

The public has a vital interest at stake which must override qualms concerning disclosure on the part of those on whom defendant asks the Court to rely. However, in this case the Court is inclined to minimize even unfounded concerns since there seems to be no immediate public interest which requires present disclosure of evidence taken in bail justification procedures. If defendant elects duly to waive his right to a public hearing thereon and requests confidentiality, the remainder of the bail proceedings including the examination of the witnesses will be conducted *in camera* and the evidence will be sealed until further order of this or any higher Court, not to be disclosed by any party to these proceedings or by their privies unless the bail becomes forfeited. Such inquiry will involve only the presence of the Court, the Clerk, the defendant, the attorneys, the official Court Reporter and the witnesses. Under these safeguards there will be no legitimate basis even for the conjecture that defendant is in any way impeded in producing legitimate bail because of reluctance of suppliers of funds to become publicly known.

The government is entitled and is granted the opportunity to ascertain the facts in respect of the sources of the bail including those to whom the corporate surety looks to secure its agreement to issue the bond.

To that end, the corporate surety shall submit an affidavit setting forth the amount of collateral which it has received for the issuance of the bond and whether it holds any obligation from anyone to indemnify it in respect of the difference between the value of the collateral and the face amount of the bond and if so stating the nature and extent thereof. This information shall indicate whether and to what extent the bonding company has an unsecured interest in the appearance bond. Furthermore, those on whom the corporate surety relies as the source of reimbursement to it in the event of a forfeiture and who have not already testified herein in respect to their interest shall be submitted by the defendant for oral examination and cross-examination under oath, to be conducted at the choice of the defendant either by deposition at a convenient place or before the Court, on the issues pertinent to release on bail; and if defendant so desires, said examination shall be conducted before the Court *in camera* as indicated above.

So ordered.