**UNITED STATES**

v.

**Lenny BATISTA, Defendant**

**No. 00 CR. 1296(RWS).**

United States District Court, S.D. New York.

April 10, 2001.

*MEMO OPINION*

SWEET, District Judge.

Defendant Lenny Batista ("Batista") has applied for an order directing that he has complied with the bail conditions imposed by the Honorable Andrew J. Peck, Magistrate Judge. Specifically, Batista seeks a ruling to the effect that the government's decision not to approve three proffered cosigners was arbitrary, and that they be approved. The government opposes the motion on the grounds that the proposed suretors are neither financially responsible nor able to exert moral suasion over Batista. In the alternative, Batista seeks to have the bail conditions modified.

For the reasons set forth below, the motion to approve Angel L. Rodriguez is granted, but the motion to approve the remaining proposed suretors will be denied, although the number of suretors required will be reduced from five to three.

At a bail hearing on December 13, 2000, Judge Peck imposed the following release conditions on Batista: $250,000 personal

recognizance bond co-signed by five financially responsible persons and secured by $15,000 in cash, surrender of travel documents, and home incarceration with electronic monitoring.

These conditions were consistent with the recommendation of the United States Pretrial Services office, which views Batista as a flight risk due to the fact that he has family ties in Puerto Rico, misrepresented facts regarding his criminal history when interviewed by that office, and faces a mandatory ten-year minimum term if convicted. Moreover, the government represents that one of Batista's codefendants has already fled the jurisdiction.

As of January 16, 2001, when this Court held a bail modification hearing, Batista's brother, Albert Santiago, had signed the bond for $15,000 in cash. At the hearing, Batista moved to amend the conditions from five to three cosigners, or in the alternative that he be released once three suretors signed the bond, and granted three additional weeks in which to secure two additional co-signers. The motion was denied, although Batista was granted leave to renew his application once three suretors had co-signed the bond.

Legal Standard for Bail Conditions

■ Neither party has provided any authorities regarding the appropriate standard for assessing the terms, "financially responsible." However, Judge Peck stated at the bail hearing that the suretors would need to possess enough assets so that they would collectively be able to pay the full amount of the bond if necessary. (Dec. 13, 2000 Tr. at 14.) In a similar case, the Honorable Charles S. Haight has confirmed that the relevant standard is "the ability to pay the amount specified in the bond if [the defendant] fails to appear at trial." *United States v. Gotay,* 609 F.Supp. 156, 156 (S.D.N.Y.1985). *See also* 18 U.S.C. § 3142(c)(1)(B)(xii) (requiring

that sureties be "solvent," with "a net worth which shall have sufficient unencumbered value to pay the amount of the bail bond.").

■ In addition to the requirement of financial responsibility, a defendant must show that the proposed suretors exercise moral suasion to ensure the defendant's presence at trial. As the Honorable Milton Pollack has noted:

> [T]he Court is entitled to have a moral as well as a financial assurance ... of the defendant's appearance in Court when required ... [T]he function of bail is not to purchase freedom for the defendant but to provide assurance of his reappearance after release on bail.... The bail is not for the purpose of providing funds to the government to seek the defendant should he go underground or flee the jurisdiction. Bail is intended as a catalyst to aid the appearance of the defendant when wanted.

*United States v. Melville,* 309 F.Supp. 824, 826–27 (S.D.N.Y.1970). Appropriate factors to consider when weighing whether a proposed suretor exercises moral suasion vary from case to case, but may include the strength of the tie between the suretor and defendant (i.e. family or close friend, close or estranged), the defendant's roots in the community, and the regularity of contact between suretor and defendant. *See, e.g., U.S. v. Sierra,* No. 99 CR. 962(SWK), 1999 WL 1206703 (S.D.N.Y. Dec.16, 1999) (considering with approval local community ties and moral suasion exerted by friends and cousins in the United States); *U.S. v. Julio Rodriguez,* No. 84 Cir. 841(JFK), 1984 WL 1380, *2 (S.D.N.Y. Dec. 27, 1984) (rejecting offer of defendant's cousin-in-law to post bond on Florida house owned by his corporation); *Melville,* 309 F.Supp. at 828 (considering defendant's roots in the community and

analogizing suretor to "character witness at trial"). *See also* 18 U.S.C. § 3142(g)(3)(A) (enumerating factors to consider in setting bail conditions).

■ The number of suretors to be required is within the discretion of the court, and should be tailored to meet the same goals as the financial and moral suasion conditions, namely ensuring the defendant's presence at trial without imposing an undue burden.

## Proposed Suretors

Batista has located three additional individuals in Puerto Rico who were willing to sign the bond. However, the government has rejected all of them on the ground that they are of insufficient means to constitute "financially responsible persons," and that they lack moral suasion over him.

The three individuals offered as financially responsible co-signers are: Batista's eldest sister, Yolanda Muniz Aragon ("Ms.Aragon"); her boyfriend, Angel Rodriguez ("Mr.Rodriguez"); and Batista's childhood friend, Andrea L. Delacruz ("Ms.Delacruz"). Counsel for Batista represents that Mr. Rodriguez owns the Los Technicos H. Service auto repair shop in Puerto Rico with an annual revenue of $131,000 and owns an unappraised 1999 Chevrolet and 32–foot speedboat; that Ms. Aragon owns a 1998 Chevrolet Malibu and is currently employed by Mr. Rodriguez at his auto repair shop "off the books," earning $200.00 weekly plus all personal expenses; and that Ms. Delacruz, who is financing a 1997 Kia Sephia, is employed at the Marriott Vacation Club International earning approximately $617.50 biweekly. Documentation of certain financial information regarding Ms. Aragon and Ms. Delacruz is attached to the instant motion. (Guttlein Letter of Feb. 23, 2001 Exs. A, B.) Counsel for Batista provided additional documentation of Rodriguez's financial status, including a 1999 New York State tax return reflecting gross earnings of $137,837; titles for a pick-up truck, trailer and boat; two pages from what is purportedly a deed of sale for Rodriguez's land reflecting a $30,000 sale price. (Guttlein Letter of March 27, 2001 Exs. B, C, D and E.)

The government responds that, given these individuals' low incomes, they cannot be considered sufficiently "financially responsible" to secure a $250,000 bond, particularly in light of their inability to document their financial status. In particular, the government notes that although De la Cruz had a bank account containing over $2000 at the time she was originally offered as a suretor, she has subsequently closed that account and now represents that the total balance in her two remaining accounts is approximately $968. Although Aragon represented that she owns a $134,000 home with an outstanding $50,000 mortgage, an apartment worth $80,000, and a vehicle in Puerto Rico, she was unable to provide credible documentation that she owned these assets.

Finally, the government argues that these three individuals lack moral suasion over Mr. Batista because they live in Puerto Rico and have not been in regular contact with him since he moved to New York several years ago.

## Analysis

■ Under the standard set forth above, only Rodriguez qualifies as an appropriate suretor on financial grounds in light of the recently disclosed documentation of his income and assets. *See* 18 U.S.C. § 3142(c)(1)(B)(xi), (xii). Due to their low incomes, neither De la Cruz nor Aragon is sufficiently financially responsible to co-sign for a $250,000 bond, or even the reduced $150,000 bond as modified below. Therefore, the government's decision

to reject De la Cruz and Aragon as suretors was not arbitrary.

Despite his financial responsibility, however, there is no indication that Rodriguez has moral suasion over Batista. In fact, Rodriguez represented to the government that he has "no relationship" with Batista and has neither seen nor spoken to him since Batista moved to New York from Puerto Rico several years ago.

Some courts have required that each proposed suretor meet both the financial and moral suasion requirements—in other words, that the prospect of losing the cash or property posted give rise to moral suasion against flight. *See, e.g., United States v. Diaz*, No. 98 CR. 1434(CSH), 1998 WL 915896, *2 (S.D.N.Y. Dec. 30, 1998) (requiring that individual suretor both be financially responsible and exercise moral suasion); *United States v. Sarivola*, No. 94 CR. 236(CSH), 1994 WL 613259, *4 (S.D.N.Y. Nov. 4, 1994) (noting that posting of property alone is insufficient because loss of defendant's sister's home if defendant were to flee "would not overly trouble" the defendant).

■ However, it may not always be possible to find individuals with sufficient assets to post who also may exert moral suasion over a defendant. A person with moral suasion over the defendant will be able to influence him to appear in court regardless of whether the money at stake is put up by a third party. Therefore, a defendant who presents some individuals with moral suasion and others who are financially responsible may satisfy the requirements of bail.

As such, Rodriguez may sign the bond and post that security and property enumerated above.

■ In addition, both the number of suretors and amount of bail required shall be reduced. Although other courts have required five suretors in similar cases involving substantial evidence of involvement in large narcotic conspiracies, *see, e.g., United States v. Lopez*, No. CR 96 701, 1998 WL 440427 (S.D.N.Y. June 5, 1998), three suretors who meet the standards for financial responsibility and moral suasion addressed above will be sufficient to ensure Batista's presence at trial.

As in *United States v. Penaranda*, No. 00 Cr. 1251(RWS) 2001 WL 125621 (S.D.N.Y. Feb. 13, 2001), this case "raises difficult questions regarding the viability of economic coercion as a means of assuring a defendant's appearance at trial where the defendant and his family and friends are of limited means." 2001 WL 125621, at *2. Following the reasoning of *Penaranda*, the bail conditions shall be changed as follows: three people, at least one of whom must exert moral suasion over him, must sign the bond, which shall be reduced to $150,000.

## Conclusion

For the reasons set forth above, proposed suretor Rodriguez may sign the bond, which shall be reduced to $150,000. A total of three people, at least one of whom exerts moral suasion over the defendant, shall be required sign to secure Batista's release.

It is so ordered.