**UNITED STATES of America,
Plaintiff,**

v.

**Darian Ray THOMAS, Defendant.**

**No. C09–0363 SBA.**

United States District Court,
N.D. California.

April 21, 2009.

---

**1084**

James Craig Mann, United States Attorney's Office, Oakland, CA, for Plaintiff.

Joyce Leavitt, Federal Public Defender's Office, Oakland, CA, for Defendant.

## MEMORANDUM SUPPORTING ORDER OF RELEASE

BERNARD ZIMMERMAN, United States Magistrate Judge.

Following a detention hearing, I announced that I was prepared to release Darian Ray Thomas on a $200,000 unsecured bond with a substantial number of conditions co-signed by his parents, his brother, his sister, and a longtime friend. The government objected to these signatories because none of them had completed an affidavit of surety which the government contended is required by Rule 46(e) and because some of the sureties were not financially responsible and they did not have $200,000 in assets. The government then informed me that it intended to seek review of my decision, prompting me to author this Memorandum to explain my reasoning.

The government has been announcing for some weeks that it will insist on having signatories to an unsecured bond complete an affidavit of surety in accordance with Rule 46(e). The government has proposed that Form AO 98A be used. That form has been replaced by Form AO 100B. Since the government has never had such a requirement in the 13 years that I have been a magistrate judge, I inquired of my colleagues around the country whether

their courts are requiring such affidavits. Eighteen districts responded. No responding district requires signers to complete an affidavit in court. Sixteen districts do not use surety affidavits at all. One district advised that its Pretrial Services Office obtains a affidavit if the surety is pledging personal property such as an RV or motor home. Another district advised that its U.S. Attorney's Office screens sureties and uses a surety affidavit. Most districts regularly release defendants on unsecured signature bonds.

■ To the extent that Rule 46(e) requires that the court have information before it determines whether a surety is financially responsible, I believe that my questioning the prospective signers, under oath if appropriate, in open court provides me with a more thorough basis for making that assessment than having them complete a form, such as AO 100B.

■ This brings me to whether the Bail Reform Act and Rule 46(e) prohibit a court from including, in the set of conditions on which a defendant would released pending trial, a requirement that people who have significant connections to the defendant—but who have relatively little net worth—sign a bond under which they would be obligated to pay the government, over time, a sizeable sum of money should defendant violate the bond. Any analysis begins with a defendant's constitutional right to be released on bail. *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Stack v. Boyle*, 342 U.S. 1, 72 S.Ct. 1, 96 L.Ed. 3 (1951). Congress implemented this right in the Bail Reform Act which requires that a defendant be released on the least restrictive conditions. 18 U.S.C. § 3142(c)(1)(B). Section 3142(b) permits a defendant's release on an unsecured bond. Section 3142(c)(1)(B)(xii) permits a defendant to be released on a bail bond with solvent sureties while subsection xiv permits a defen-

dant to be released on "any other condition" that will accomplish the purposes of pretrial release. Finally, section 3142(c)(2) prohibits the court from imposing "a financial condition that results in the pretrial detention of the person." Read together, I believe these statutes permit a court to release a defendant on a bond with conditions, but not secured by assets or net worth, when the court concludes that such a bond contains the least restrictive conditions that will assure defendant's appearance and the safety of the community.

■ In this case, defendant does not present a serious flight risk but does present a danger to the community should he deal in drugs while on release. The principal conditions I imposed for addressing that risk are initial residence in a halfway house which, if uneventful, will be followed by release into his sister's custody at night and his friend and prospective employer's custody during the day, coupled with electronic monitoring. Neither the defendant nor his family or immediate friends have any substantial assets such as real or personal property to post as security. They do not have net worths equal to the face amount of the bond. However, because I am satisfied that the defendant can be released on appropriate conditions, failing to release him under the bond in question and insisting on sureties with assets would be tantamount to imposing a financial condition that results in pretrial detention.

I conclude, as do many of my colleagues around the country, that the term "surety" as it is used in § 3142(c)(1)(B)(xii) and Rule 46(e) applies when the court has concluded that it is necessary to look to the assets of the surety to assure compliance with the bond. The government has not persuaded me that it applies to situations in which a person is signing an unsecured signature bond. Here, I am willing to release the defendant on a $200,000 unsecured bond with conditions. Three of the

signatories, the sister, brother and friend, have annual incomes totaling about $150,000. I have explained that in event of a violation, the government can obtain a civil judgment against them in an amount up to $200,000, a judgment which can be pursued for at least 20 years. I believe that these signatories can exercise moral suasion on defendant and that he will be loathe to get them into financial trouble. The same goes for his parents, even though they are not financially responsible, at least now. Thus, I have concluded that having these family members and friends make this significant commitment and take this risk will motivate the defendant to comply with the terms and conditions of release. *See United States v. Melville*, 309 F.Supp. 824, 826–27 (S.D.N.Y.1970) ("The Court is entitled to have a moral as well as a financial assurance ... of the defendant's appearance in Court when required.... The function of bail is not to purchase freedom for the defendant but to provide assurance of his reappearance after release on bail...."); *See also, United States v. Batista*, 163 F.Supp.2d 222 (S.D.N.Y.2001) (stating that "a defendant who presents as suretors some individuals with moral suasion and others who are financially responsible may satisfy the requirements of bail."); *United States v. Hammond*, 204 F.Supp.2d 1157, 1166–67 (E.D.Wis.2002) (the court may, in assessing the sufficiency of any property posted to secure release, consider whether the person posting the property has sufficient "moral suasion" over the defendant to ensure his appearance).

Most significantly, I have concluded that having these family members and friends sign the unsecured bond and expose themselves to a civil judgment that the government could enforce against them for many years is both necessary and sufficient, along with the other conditions I have fashioned, to achieve the objectives of the Bail Reform Act. To add a requirement that each of these signatories also demonstrate that they have a net worth equal to the size of the bond, a condition we know they could not meet, is not necessary to achieve the statute's purposes. It follows that imposing such a requirement would unjustifiably and unconstitutionally result in the defendant's pretrial detention.

The government's position will produce results seemingly inconsistent with the constitutional right to bail and the purposes of the Bail Reform Act. It will either restrict the ability of the courts to release people who have no assets, or require that the face amount of the bond be minimal, thereby reducing the incentives a defendant has to comply with the conditions of release and the signatories have for ensuring compliance. The government seeks to deprive the courts of what, in my 13 years of experience as a magistrate judge, having presided over hundreds of detention hearings, is one of the most important tools a court has in assuring a defendant's compliance with conditions of release.[1] And other than its literal reading of Rule 46, the government has advanced no justification for depriving the courts of such an effective and sometimes essential tool.

In conclusion, I am satisfied that the least restrictive conditions that address the risk of danger defendant presents are the residency and custodial restrictions I have imposed coupled with the defendant's desire to avoiding getting his family and longtime friend in financial trouble.

---

1. I understand from Pretrial Services that this district's failure to appear rate of defendants on bond is just over 1%. I cannot remember a single defendant that I released ever having been brought back to court for violating the bond by selling drugs.