[NOT FOR PUBLICATION—NOT TO BE CITED AS PRECEDENT]

# United States Court of Appeals

## For the First Circuit

---

No. 01-1629

UNITED STATES,

Appellee,

v.

ROBERTO FORTES NEVES,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

---

Before

Selya, Boudin and Lynch,
Circuit Judges.

---

J. Martin Richey on brief for appellant.
Donald K. Stern, United States Attorney, and Timothy Q.
Feeley, Assistant U.S. Attorney, on brief for appellee.

---

May 31, 2001

---

**Per Curiam**. Defendant Roberto Fortes Neves appeals from the district court's order revoking the magistrate judge's pretrial release order.

I. Procedural Background

Neves is charged with illegal reentry after deportation, in violation of 8 U.S.C. § 1326. Born in Cape Verde twenty-five years ago, Neves came to the United States with his mother as an infant. He remained here, without becoming a U.S. citizen, until his deportation to Cape Verde in 1999. Neves was deported pursuant to 8 U.S.C. § 1227(a)(2), following a state conviction for distributing cocaine. He returned to this country and was arrested in New Bedford, Massachusetts on February 13, 2001. The Immigration and Naturalization Service ("INS") reinstated its prior order of removal/deportation pursuant to 8 U.S.C. § 1231(a)(5). Neves' removal has been stayed, however, pending his trial and the expiration of any period of incarceration imposed in this case.

The government moved for detention pending trial pursuant to 18 U.S.C. § 3142 (f)(2)(A), on the ground of risk of flight. Following a hearing, the magistrate judge denied the government's motion and ordered Neves released on the following conditions: 1) execution of an appearance bond

in the amount of $150,000, to be secured with $15,000 in cash; 2) confinement of Neves to his mother's residence where he is to be under the custody of his mother; and 3) monitoring at all times by an electronic bracelet. The government moved for reconsideration of the release order. A hearing was held pursuant to United States v. Nebbia, 357 F.2d 303 (2d Cir. 1966), at which Neves' mother, Maria Fortes, and his former girlfriend, Adamiz Goncalves (the sureties), testified. The magistrate judge denied the government's motion, but stayed Neves' release pending the district court's determination of the government's motion to revoke the release order. See 18 U.S.C. § 3145(a)(1).

The district court held a bail hearing, at which Fortes and Goncalves testified again. The district court issued a five-page memorandum and opinion stating its reasons for finding that Neves posed a risk of flight and that there was no condition or combination of conditions (including those imposed by the magistrate judge) which would reasonably assure his appearance in court when required. The district court granted the government's motion for revocation of the order of release and for Neves' detention pending trial. Neves appeals from that order.

II. Standard of Review

We apply an intermediate level of review to the district court's detention order, "tempered by a degree of deference to the determinations made below." United States v. Tortora, 922 F.2d 880, 882-83 (1st Cir. 1990).

> If upon careful review of all the facts and the trial judge's reasons the appeals court concludes that a different result should have been reached, the detention decision may be amended or reversed. If the appellate court does not reach such a conclusion -- even if it sees the decisional scales as evenly balanced -- then the trial judge's determination should stand.

United States v. O'Brien, 895 F.2d 810, 814 (1st Cir. 1990).

The government moved for detention pursuant to 18 U.S.C. § 3142, which provides, in relevant part, that if, after a hearing, the judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required . . . , such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e). In making such determination, the judicial officer is to consider, among other factors, the weight of the evidence against the defendant, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, criminal history, and record concerning appearance at court proceedings. Id. § 3142(f).

-4-

Our review of the district court's determination that no conditions of release will reasonably assure Neves' appearance proceeds in two steps. First, we "decide whether we agree with the district court that the government proved that the defendant poses a . . . risk of flight." United States v. Patriarca, 948 F.2d 789, 791 (1st Cir. 1991). Second, if "there is some risk, we proceed to evaluate the conditions to see if they will serve as a reasonable guard." Id.

### III. Risk of Flight

Based upon our independent review of the record, we do not hesitate in agreeing with the district court's determination that Neves poses a risk of flight. He has a lengthy criminal record in the state courts, dating from 1984 and continuing until his drug conviction in 1996, which precipitated his deportation to Cape Verde. The district court supportably found that Neves' record was "remarkable for the number of defaults." The weight of the evidence against Neves on the illegal re-entry charge is strong and the INS has reinstated the prior deportation order. Compare United States v. Xulam, 84 F.3d 441, 444 (D.C. Cir. 1996) (revoking order of detention where there was no outstanding deportation order against defendant). The evidence supports

the district court's findings that Neves has both a general tendency to avoid court appearances and a strong incentive to flee in this case to avoid the near-certainty of a prison sentence followed by deportation again to Cape Verde.

Neves argues that the district court overestimated the length of sentence that Neves would receive because it did not take into consideration the possibility of a downward departure from the applicable guideline sentencing range. As the government points out, however, a downward departure would not soften the most dreaded consequence facing Neves: reinstatement of his deportation to Cape Verde. Neves claims that he lacks the financial resources to flee and to avoid prosecution. But, his mother has testified that she has $8,000 in savings and would rather see Neves dead than returned to Cape Verde. Neves was able to obtain the financial resources necessary to get himself back to this country from Cape Verde. Neves points to his voluntary appearance in the state court on the most serious of his previous charges. Those cases, however, did not involve the same near-certainty of conviction and subsequent deportation that Neves faces in this case. Moreover, at the time of those appearances, Neves had not yet experienced the grim realities of deportation. Applying independent review

to the district court's determination that Neves poses a risk of flight, we are not persuaded that "a different result should have been reached." O'Brien, 895 F.2d at 814.

IV.     Adequacy of Conditions

A. $150,000 Bond Secured by $15,000 from Fortes and Goncalves

We need not assume that Neves lacks close ties to his family and to Goncalves to find that the bond provides inadequate protection against flight.  As the government argued before the district court, Fortes and Goncalves might well be willing to sacrifice the $15,000 security to help Neves avoid being deported again to Cape Verde.  Both sureties testified that they felt it was unfair for Neves to be deported to a country where he has no ties and faces language and cultural barriers.  Although the sureties also testified that they were willing to put up their life savings because they trusted Neves to appear in court, the prospect of a significant federal sentence followed by deportation might overcome Neves' loyalty to his family and friends.

B. Electronic Monitoring

-7-

We have recognized the value of electronic monitoring in pretrial release cases "especially in allowing early detection of possible flight." Tortora, 922 F.2d at 887. But, where, as in this case, there is a particularly strong incentive to flee, the early detection capabilities of electronic monitoring may be insufficient to overcome that incentive and to guard against the risk of flight. Neves argues that electronic monitoring would be effective here because he "utterly lacks the resources to run very far for very long." However, as explained above, we are not persuaded that lack of resources poses an insurmountable hurdle to Neves' flight.

C. <u>Placement of Neves in the Custody of his Mother</u>.

Neves argues on appeal that his mother will be able to control him because her custody will be augmented by the electronic monitor. It is not clear, however, what additional protection Neves' mother would provide, beyond that provided by the electronic bracelet. We do not doubt the sincerity of her good intentions, but Fortes' ability to serve as custodian is hampered by, among other things, her full-time job which she testified keeps her away from home for "forty or more" hours a week.

Having carefully reviewed the record and considered the district court's reasons for revoking release, we are not persuaded that a different result should have been reached. The evidence supports a finding that Neves poses a risk of flight and that no condition or combination of conditions (including those imposed by the magistrate judge) would reasonably assure Neves' appearance in court. His record of failed appearances combined with the weight of the evidence and near-certainty of deportation persuade us that the district court did not err in granting the government's motion pursuant to § 3142(e).

The district court's order, dated April 18, 2001, revoking the magistrate judge's order of release and ordering Neves detained pursuant to 18 U.S.C. § 3142(e), is affirmed.