**UNITED STATES of America**

v.

**Kwadjo Osei ADOMAKO**

**No. 6:00CR195ORL22KRS.**

United States District Court,
M.D. Florida,
Orlando Division.

June 14, 2001.

Charles Michael Greene, Law Office of Charles M. Greene, Orlando, FL, for defendant.

ORDER

GLAZEBROOK, United States Magistrate Judge.

This cause came on for hearing on June 12, 2001 on the following motion:

> **MOTION: DEFENDANT ADOMA-KO'S EMERGENCY MOTION FOR RELEASE FROM THE CUSTODY OF THE IMMIGRATION AND NATURALIZATION SERVICE (Doc. No. 28)**
>
> **FILED:    June 5, 2001**
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED in part and DENIED in part as moot.**

I. *THE SEPARATION OF POWERS ISSUE*

After a full hearing on March 15, 2001 pursuant to 18 U.S.C. §§ 3142(f), Docket No. 13, this Court denied the government's motion to detain Adomako. Docket Nos. 13, 15. This Court ordered the United States Marshal to hold Adomako in custody until notified by the Clerk that Adomako had posted bond and complied with the conditions for release on electronic moni-

toring. Docket Nos. 13, 15. The United States did not appeal from the denial of its motion for detention. *See* 18 U.S.C. § 3145; 28 U.S.C. § 636(b)(1)(a). Adomako claims that the United States Department of Justice[1] refuses to release him pursuant to this Court's release order because of an administrative detainer issued by the INS. Adomako further objects that the INS has incarcerated him in several county jails far from his defense counsel and translator, impairing his ability to prepare his defense. Docket No 28 at 1—2.

In response, the government contends that the Attorney General alone has the power to release or detain a deportable alien, and that this Court has no jurisdiction to review the Attorney General's decision to detain Adomako (and to lodge a detainer with the United States Marshal). Docket No. 30 at 5. Although the government does not contest that Congress requires United States Magistrate Judges to determine whether release conditions will reasonably assure the appearance of citizens and illegal aliens alike, 18 U.S.C. § 3142(d)—(e), the government contends that a court's decision to release a deportable alien has no effect unless the Attorney General has ordered his release.

The government further informs the Court that the INS intends to deport Adomako *regardless of the status of the criminal proceedings.* The government states, however, that it will notify the Court should deportation become imminent. Docket No. 30 at 11, n.9 and surrounding text. Lastly, the government argues that the INS's closest facilities are 200 to 500 miles from Orlando, and that this Court

has no jurisdiction to hear Adomako's challenge to the Attorney General's discretionary power to transfer aliens among those facilities. Docket No. 30 at 10.

## II. *THE LAW ON DETENTION OF DEPORTABLE ALIENS*

The constitutional and statutory rights of citizens and non-citizens alike depend upon the separation of powers. It is fundamental that the legislative power of the United States is vested in Congress, and the executive power in the President. U.S. CONST. Art. I, § 1 and Art. II § 1. The judicial power of the United States is vested in the United States Supreme Court, and in such inferior courts as Congress may from time to time ordain and establish. U.S. CONST. Art III, § 1. The judicial power extends to all cases, in law and equity, arising under the Constitution and the laws of the United States. U.S. CONST. Art. III, § 2. But the judicial power is limited in scope. The judiciary must take care not to exceed jurisdictional limits set by the Constitution and by Congress.

### A. *Release and Detention in Criminal Proceedings*

■ Congress has decreed that a judicial officer[2] shall order that an arrested person be released or detained pending judicial proceedings. 18 U.S.C. § 3141(a). Upon the appearance of a person charged with an offense,[3] the judicial officer must issue an order that, pending trial, the person be 1.) released on his own recognizance or unsecured bond; 2.) released on

---

**1.** The United States Department of Justice comprises the Office of the United States Attorney; the Immigration and Naturalization Service ["INS"]; and the United States Marshal's Service.

**2.** "Judicial officer" is defined in 18 U.S.C. § 3156(a)(1) and (b)(1).

**3.** "Offense" is defined in 18 U.S.C. § 3156(a)(2) as meaning "any criminal offense... which is in violation of an Act of Congress and is triable in any court established by Act of Congress."

conditions; 3.) temporarily detained to permit *deportation;* or 4.) detained. 18 U.S.C. § 3142(a). Congress has mandated that the judicial officer *shall* order the pretrial release of the person on preferred conditions *"unless* the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b)(emphasis supplied). Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings. *See* 18 U.S.C. § 3142(a)(3) and (d).

If the judicial officer determines that a person is not a citizen of the United States or lawfully admitted for permanent residence *and* that he may flee or pose a danger to the community, the judicial officer *shall order temporary detention for not more than ten days,* and direct the attorney for the government to notify the appropriate INS official. 18 U.S.C. § 3142(d)(1)(B). Thus, a determination as to whether the alien may flee is essential even to a decision to impose temporary detention. If the INS official does not take custody during a period of not more than ten days, Congress directs the Court to apply the normal release and detention rules to the deportable alien without regard to the laws governing release in INS deportation proceedings:

> If the official fails or declines to take such person into custody during that period, such person shall be treated in accordance with the other provisions of this section, **notwithstanding the applicability of other provisions of law governing release pending** trial or **deportation** or exclusion **proceedings.**

18 U.S.C. § 3142(d) (bold emphasis supplied).

Where a judicial officer decides that detention is required, the detention order 1.) directs that the person be committed to the custody of the Attorney General for confinement separate from persons awaiting or serving sentences; 2.) directs that the person be afforded reasonable opportunity for private consultation with counsel; and 3.) directs that the person be delivered to the United States Marshal for appearance in court. 18 U.S.C. § 3143(i)(2)—(4). The government may obtain review of a magistrate judge's release order by filing a motion for revocation of the release order in the district court, which motion will be determined promptly. 18 U.S.C. § 3145(a). Further review of a release order may be had in the court of appeals. 18 U.S.C. § 3145(c).

## B. *Administrative Detention and Deportation*

Congress has enacted detailed legislation regarding the deportation or "removal" of aliens. The Attorney General shall remove an alien from the United States within ninety days of his release from detention or confinement (the "removal period"). 8 U.S.C. § 1231(a)(1). During the removal period, the Attorney General shall detain the alien, and "under no circumstance" release him. 8 U.S.C. § 1231(a)(2). If an alien is not removed within the removal period, the alien is subject to supervision under regulations prescribed by the Attorney General. 8 U.S.C. § 1231(a)(3). The Attorney General may not remove an alien who is sentenced to imprisonment until the alien is released from imprisonment. 8 U.S.C. § 1231(a)(4)(A). Parole, supervised release,[4] probation, "or *possibility of further imprisonment is not a reason to defer removal."* 8 U.S.C. § 1231(a)(4)(A) (em-

---

**4.** If an alien is subject to deportation, a district court may order him deported as a condition of supervised release. 18 U.S.C. § 3583(d).

phasis supplied). The Attorney General must arrange for appropriate places of detention for aliens pending removal.

Congress has defined in great detail the scope of judicial review of an order of removal. *See* 8 U.S.C. § 1252. Judicial review of a final order of removal may be had only in the court of appeals. 8 U.S.C. § 1252(a)(1); 28 U.S.C. § 2341 and following (Chapter 158). Section 1252, however, does not discuss judicial review of an order of detention in an administrative removal proceeding. The statute does require the consolidation of all questions of law and fact for judicial review:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

8 U.S.C. § 1252(b)(9) (section (b) relates to the requirements for review of orders of removal). Section 1252 further states that:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

8 U.S.C. § 1252(g).

The United States relies on *Richardson v. Reno,* 180 F.3d 1311 (11th Cir.1999) to support its argument that this Court lacks jurisdiction to "reconsider" the custody decision made in this matter by the INS.

Docket No. 30 at 4—5. In *Richardson,* an alien in an administrative removal proceeding brought a habeas corpus action in the district court to challenge his denial of bond by the INS. He had not yet obtained a final removal order. Because § 1252(b)(9) requires the consolidation of all questions of law and fact arising from removal in a single appeal to the court of appeals, no habeas review was available in the district court. 180 F.3d at 1315. *Richardson,* however, had nothing to do with a district court's decision under 18 U.S.C. § 3142 to release or detain a deportable alien in the context of a criminal proceeding.[5]

## III. *APPLICATION TO ADOMAKO*

### A. *Procedural History*

On November 11, 2000, the Grand Jury returned an indictment charging Adomako with making a false statement in applying for a United States passport in violation of 18 U.S.C. § 911; 18 U.S.C. § 1542; and 18 U.S.C. § 1621. Docket No. 1. The government moved for detention at the initial appearance before the Honorable Karla Spaulding. As duty magistrate judge, the undersigned then held an arraignment and full detention hearing on the government's motion on March 15, 2001. Docket No. 13. The hearing lasted one hour and fifteen minutes, and included the testimony of witnesses and a thorough review of the Pretrial Services Report. Docket No. 13. The Court carefully considered the government's argument that Adomako posed a risk of flight as an illegal alien who is subject to deportation.

Having heard argument from counsel, the Court denied the government's motion for detention, and ordered Adomako re-

---

**5.** In a criminal proceeding, Congress requires the district court to treat the illegal alien "in accordance with the other provisions of this section, *notwithstanding the applicability of* *other provisions of law governing release pending* trial or *deportation* or exclusion proceedings." 18 U.S.C. § 3142(d) (emphasis supplied).

leased on electronic monitoring with home confinement. Docket No. 13. The Court also ordered Pretrial Services supervision, $50,000 bond with Theresa Cineas as surety and third party custodian, restricted residence and travel, and no passport. Docket Nos. 13, 15. Concurring with Pretrial Services, the Court found that Adomako did not pose a risk of flight under the combination of conditions imposed. The Court ordered the United States Marshal to "keep the defendant in custody until notified by the Clerk or Judicial Officer that the defendant has posted bond and/or complied with all other conditions for release." Docket No. 15 at 2. The government did not appeal the adverse ruling.

Pretrial Services never completed its review of the suitability of Adomako's home for electronic monitoring because the United States Marshals Service erroneously released Adomako to the INS on a detainer. The Marshal released him to INS without having received notice from the Clerk or Judicial Officer that Adomako had complied with release conditions. Adomako was in INS custody from about March 23, 2001 to about June 10, 2001. After receiving notice of the June 12 hearing on Adomako's emergency motion, the Marshal regained custody of Adomako from INS and produced him at the hearing.

### B. *Analysis*

Thus, in one sense, Adomako's motion for release from INS custody is moot. He is now back in the custody of the Attorney General in the form of the United States Marshal. But in another real sense, the motion is not moot. At the June 13 hearing, the government stated its intent to take Adomako back into INS custody should the Clerk notify the Marshal that Adomako has met the conditions for release.

Without doubt, only the court of appeals has jurisdiction to review a final decision of the Attorney General to deport or remove Adomako from the United States. Congress has expressed its intent to consolidate into one appeal all issues of law and fact pertaining to removal after the exhaustion of administrative remedies. But Adomako does not seek to challenge his deportation or removal in this court. He does not seek judicial review of a question of law or fact, or an interpretation of statutory provisions, arising from any action taken or proceeding brought to remove him from the United States. The government argues that the Attorney General has ordered Adomako detained—a detention order "arising from any action taken or proceeding brought to remove an alien from the United States" within the meaning of 8 U.S.C. § 1252(b)(9). But the government ignores the context in which Congress placed § 1252(b)(9). Section 1252, in general, relates to judicial review of *orders of removal.* Specifically, § 1252(b) relates to the requirements for review of *orders of removal.* The introductory sentence to § 1252(b) states that "[w]ith respect to review of an *order of removal* under subsection (a)(1) of this section, the following requirements apply..." In other words, § 1252(b)(9)(relating to consolidation of questions for judicial review) is one of nine requirements that apply with respect to review of an *order of removal.* Adomako does not ask this Court to review an order of removal, and § 1252(b)(9) does not apply.

Neither does Adomako ask this Court to hear any claim arising from the decision or action by the Attorney General to commence proceedings against him, to adjudicate his case, or to execute a removal order against him. This Court has no jurisdiction over such matters. 8 U.S.C. § 1252(g).

■ The government's argument skips over the very statute in which Congress reconciles the release and detention statutes with the administrative deportation statutes. Congress expressly instructs this Court to disregard the laws governing release in INS deportation proceedings when it determines the propriety of release or detention of a deportable alien pending trial:

> If the official fails or declines to take such person into custody during that period, such person *shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings.*

18 U.S.C. § 3142(d) (emphasis supplied). Congress instructs this Court to apply the normal release and detention rules to a deportable alien (i.e., "such person shall be treated in accordance with the other provisions of this section"). Aware of the existence of 8 U.S.C. § 1252(b)(9) and (g), Congress further instructs this Court to apply the normal release and detention rules without regard to the applicability of those other provisions ("notwithstanding the applicability of other provisions of law governing release pending... deportation or exclusion proceedings").

■ This Court had no choice but to decide whether Adomako should be released or detained pending trial. This is a real decision in a real case or controversy, not a preordained, hypothetical, advisory, or inoperative decision. Adomako is not barred from release because he is a deportable alien. An alien's INS history (to the extent that the government chooses to present it in support of its motion for detention) is, however, a factor that this Court weighs heavily in the risk of flight analysis under 18 U.S.C. § 3142(g)(3).

The Court could have ordered Adomako temporarily detained for not more than ten days, and could have directed the attorney for the government to notify the appropriate INS official. However, when the matter first came to the undersigned duty magistrate judge's attention, the INS already knew of his arrest and the parties were prepared for a dispositive detention hearing. Therefore, as directed by Congress in 18 U.S.C. § 3142(d), this Court properly applied the normal release and detention rules to the deportable alien without regard to the laws governing release in INS deportation proceedings.

The government's argument regarding lack of jurisdiction is illogical, and would frustrate Congress' express intent. It was the government that asked this Court to rule on the government's motion for detention. Surely this Court had "jurisdiction" to grant or deny that motion. At the hearing on the emergency motion, the government conceded that this Court should apply the same statutory standard for release or detention to an illegal alien as it would for any other defendant. If the government thought that the result was wrong in this case, surely the government could have obtained review of the release order by filing a motion for revocation in the district court. The district court would have jurisdiction to hear the appeal.

■ If still dissatisfied, the government could have obtained further review in the court of appeals. The United States Court of Appeals for the Eleventh Circuit is not powerless to affirm or reverse the release of a deportable alien. An INS officer's decision to file a detainer cannot divest the Court of Appeals of jurisdiction to review a district court's decision to release or detain a criminal defendant. Neither is the Court of Appeals constrained to await the possibility that one day Adomako might seek judicial review of his removal order so that he might have a vehicle for the

consolidation and review of his pretrial detention.

With respect to consultation with counsel (with an interpreter present), it matters little which pocket of the Department of Justice Adomako finds himself in. Whether Adomako is in the custody of the Attorney General as he wears his U.S. Marshals Service hat, or as he wears his INS hat, the Attorney General (wearing his U.S. Attorney's hat) wants to prosecute Adomako in a fair and speedy trial in this Court. Adomako must be reasonably available for trial preparation with counsel.

## IV. CONCLUSION

It is hereby **ORDERED** that Defendant Adomako's Emergency Motion for Release from the Custody of the INS [Docket No. 28] filed June 5, 2001 is **GRANTED in part and DENIED in part as moot.** It is

**FURTHER ORDERED** that on or before noon on Monday, June 18, 2001 (a period of not more than ten days), the Office of the United States Attorney shall file and serve a notice in this action stating whether the INS has taken Adomako into custody to permit deportation, and whether the INS intends to deport Adomako before trial (now set for June 25, 2001 or after); it is

**FURTHER ORDERED** that, if the INS has not taken Adomako into custody and filed notice under the preceding paragraph, the United States Marshal shall otherwise keep the defendant in custody until notified by the Clerk or Judicial Officer that the defendant has posted bond and/or complied with all other conditions for release; it is

**FURTHER ORDERED** that, if the United States Marshal is notified by the Clerk or Judicial Officer that the defendant has posted bond and/or complied with all other conditions for release, the Attorney General (in his capacity as head of both the United States Marshals Service and the INS) shall release the defendant so that he may comply with the conditions set for his release pending trial; it is

**FURTHER ORDERED** that at all times that Adomako remains in the custody of the Attorney General (in his capacity as head of the United States Marshals Service, the INS, or both) pending trial, Adomako shall be 1.) afforded reasonable opportunity for private consultation with counsel (with his translator present); and 2.) delivered to the United States Marshal for appearance in this Court as required. *See* 18 U.S.C. § 3143(i)(3)—(4).