**UNITED STATES of America,**
**Plaintiff,**

v.

**Jose CHAVEZ–RIVAS, Defendant.**

**No. 08–CR–31.**

United States District Court,
E.D. Wisconsin.

Feb. 27, 2008.

Brian J. Resler, United States Department of Justice, Office of the U.S. Attorney, Milwaukee, WI, for Plaintiff.

## DECISION AND ORDER

LYNN ADELMAN, District Judge.

The government charged defendant Jose Chavez–Rivas with unlawful re-entry after deportation, 8 U.S.C. § 1326, and a magistrate judge initially ordered him detained pending trial. However, the magistrate judge subsequently reconsidered and released defendant on a $50,000 bond (with $10,000 to be posted in cash) and other conditions including electronic monitoring. The government asked me to revoke the release order, and I stayed it pending review. Under 18 U.S.C. § 3145(a), my review is de novo, *United States v. Portes,* 786 F.2d 758, 761 (7th Cir.1985), but I am

not obliged to conduct a de novo hearing, *see United States v. Torres,* 929 F.2d 291, 292 (7th Cir.1991). In any case, neither side specifically requests a hearing, and I find that the record made before the magistrate judge is sufficient for me to rule. For the reasons that follow, I deny the government's motion to revoke the release order.

## I. FACTS AND BACKGROUND

Defendant was born in Mexico in 1971, but came to the United States (illegally) with his family as a child. In 1993, he was convicted of assault with a deadly weapon in a California state court and sentenced to three years in prison. In 1994, immigration authorities deported him to Mexico. He subsequently re-entered the country and married a United States citizen, Sandy Rivas, in 1997. The two settled in Wisconsin and had five children together. However, defendant's applications for permanent residence and/or adjustment of status based on his marriage were denied.

In 2004, defendant was convicted of delivery of cocaine in a Wisconsin state court and sentenced to six years probation with one year in the county jail as a condition. In April 2005, immigration authorities again deported him to Mexico. He again returned to Wisconsin and in September 2005 state authorities revoked his probation, and the court sentenced him to 3½ years initial confinement and 3½ years extended supervision. In December 2007, a Wisconsin Department of Corrections official noticed that defendant was an illegal alien and notified Immigration and Customs Enforcement ("ICE"). A grand jury subsequently indicted defendant for illegal re-entry, commencing the present case.[1]

---

**1.** Defendant has completed the confinement portion of his state sentence. However, he remains in custody on the present charge.

Defendant's children, ranging in age from three to nine, currently reside with their mother in Milwaukee. The family lived in a home they owned for nine years but lost it to foreclosure. Defendant's wife and children now live in another home in Milwaukee on a five year land contract. Mrs. Rivas has been employed by Northwestern Mutual Life Insurance Company for twenty-seven years and is currently assigned to the investment planning area, earning an annual salary of about $80,000. She borrowed $10,000 against life insurance policies on her children to come up with the cash required by the magistrate judge and agreed to pledge the amount in her 401(k) account as surety for the balance of the bond.

## II. EFFECT OF DEFENDANT'S IMMIGRATION STATUS ON THE RELEASE DECISION

In its motion, the government focuses on defendant's illegal presence in the United States and the likelihood that, if I release him, he will be turned over to ICE and deported. Thus, it argues that no conditions of release will assure his appearance in court.

Section 3142(d) of the Bail Reform Act addresses the issue of release when the defendant is a deportable alien. Under § 3142(d), if the court determines that the defendant is not a United States citizen or a lawfully admitted permanent resident and may flee or pose a danger to any other person or the community, it shall detain him for no more than ten days and direct the government's attorney to notify the

appropriate immigration official. If such official does not take the defendant into custody during that ten day period, the defendant "shall be treated in accordance with the other provisions of this section, notwithstanding the applicability of other provisions of law governing release pending trial or deportation or exclusion proceedings." 18 U.S.C. § 3142(d); *see also United States v. Adomako*, 150 F.Supp.2d 1302, 1304 (M.D.Fla.2001) ("If the INS official does not take custody during a period of not more than ten days, Congress directs the Court to apply the normal release and detention rules to the deportable alien without regard to the laws governing release in INS deportation proceedings[.]").

In the present case, the magistrate judge did not temporarily detain defendant under § 3142(d) at the initial appearance; rather, he simply entered a detention order under § 3142(f).[2] Nevertheless, ICE has been notified of defendant's presence and has not taken him into custody, instead lodging a detainer. That being the case, § 3142(d) requires me to treat defendant like any other offender under the Bail Reform Act. *See Adomako*, 150 F.Supp.2d at 1304 ("Congress chose not to exclude deportable aliens from consideration for release or detention in criminal proceedings."); *see also United States v. Hernandez*, 747 F.Supp. 846 (D.Puerto Rico 1990) (ordering release of alien-defendant charged with violation of 8 U.S.C. § 1326 where the evidence showed he was not a flight risk).[3]

---

**2.** Defendant essentially consented to the order, as he had nothing to proffer at the time. (R. 4.)

**3.** Nothing in this order precludes ICE from taking defendant into custody and thereby preventing his release. I further understand that 8 U.S.C. § 1231(a)(4) directs ICE to remove defendant and that the "possibility of

... further imprisonment is not a reason to defer removal." However, Congress's directive to the executive in 8 U.S.C. § 1231(a) does not authorize me to disregard its directive to the courts in 18 U.S.C. § 3142(d). *See Adomako*, 150 F.Supp.2d at 1307 (stating that Congress expressly instructed courts "to disregard the laws governing release in INS

## III. GENERAL RELEASE STANDARDS

Under the Bail Reform Act, a defendant charged with an offense may be (1) released on personal recognizance, (2) released on conditions, (3) temporarily detained or (4) detained. 18 U.S.C. § 3142(a). The court may deny release only if no conditions will reasonably assure (1) the defendant's appearance and (2) the safety of the community, § 3142(e), and should resolve doubts about the propriety of release in the defendant's favor, see, e.g., United States v. Hammond, 204 F.Supp.2d 1157, 1161 (E.D.Wis.2002); United States v. Barnett, 986 F.Supp. 385, 392 (W.D.La. 1997).

In determining whether (and which) conditions of release will reasonably assure the appearance of the defendant and the safety of the community, the court considers (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger, if any, that release would pose. 18 U.S.C. § 3142(g). If the court finds probable cause to believe that the defendant committed a drug offense for which the maximum penalty is ten years or more or an offense under 18 U.S.C. § 924(c), a rebuttable presumption arises that no condition(s) will reasonably assure the appearance of the defendant and the safety of the community.[4] § 3142(e). The presumption shifts the burden of production to the defendant to come forward with some evidence that if released he will not flee or endanger the community. Portes, 786 F.2d at 764. Even if the defendant rebuts it, the presumption remains in the case as an evidentiary finding militating against release, but the ultimate burden of persuasion rests on the government. United States v. Dominguez, 783 F.2d 702, 707 (7th Cir.1986).

When the government seeks detention based on the defendant's alleged dangerousness, it must establish "by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community." Portes, 786 F.2d at 764. When the government seeks detention based on the defendant's risk of flight, it must establish by a preponderance of the evidence that no conditions will reasonably assure his appearance in court. Id. at 765.

However, it is important to note that the Bail Reform Act does not authorize detention in all cases, only if:

1. The case involves a "crime of violence" for which a maximum term of

---

deportation proceedings when it determines the propriety of release or detention of a deportable alien pending trial"). Put another way, it is not the job of the judicial branch to carry out the executive branch's obligations. Finally, I do not suggest that courts should not consider a defendant's immigration status in evaluating whether he is a flight risk. See id. ("An alien's INS history (to the extent that the government chooses to present it in support of its motion for detention) is, however, a factor that this Court weighs heavily in the risk of flight analysis under 18 U.S.C. § 3142(g)(3)."); see also United States v. Neves, 11 Fed.Appx. 6, 8 (1st Cir.2001) (noting that the existence of a deportation order is relevant to the issue of flight). However, for the reasons stated later in this decision, I find that defendant's immigration status does not make him a flight risk in this case.

4. The presumption also arises in the case of defendants accused of certain serious offenses who have been convicted of a serious offense while on pre-trial release within the past five years. Recently, Congress also added a presumption in certain cases involving alleged terrorism and minor victims. 18 U.S.C. § 3142(e).

imprisonment of ten years or more is prescribed, § 3142(f)(1)(A);

2. The case involves an offense for which the maximum sentence is life imprisonment or death, § 3142(f)(1)(B);

3. The case involves an offense with a maximum sentence of ten years or more under the Controlled Substances Act, § 3142(f)(1)(C);

4. The defendant is charged with a felony and has two or more prior convictions for any of the offenses described in the 3 categories above, § 3142(f)(1)(D);

5. The case involves a felony that is not otherwise a crime of violence that involves a minor victim or that involves the possession or use of a firearm or destructive device, or any other dangerous weapon, or involves a failure to register as a sex offender, § 3142(f)(1)(E);

6. There is a serious risk that the defendant will flee (in any type of case), § 3142(f)(2)(A); or

7. There is a serious risk that a defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, or attempt to threaten, injure, or intimidate, a prospective witness or juror (again, in any type of case), § 3142(f)(2)(B).

Unless the case falls within one of the above categories in § 3142(f), the court may not detain the defendant. *E.g., United States v. Byrd*, 969 F.2d 106, 110 (5th Cir.1992) (citing *United States v. Ploof*, 851 F.2d 7, 11 (1st Cir.1988); *United States v. Himler*, 797 F.2d 156, 160 (3rd Cir.1986)) (holding that the Act limits "detention to cases that involve one of the six circumstances listed in (f)"); *United States*

*v. Friedman*, 837 F.2d 48, 49 (2d Cir.1988) (holding that "the Bail Reform Act does not permit detention on the basis of dangerousness in the absence of risk of flight, obstruction of justice or an indictment for the offenses enumerated" in § 3142(f)(1)); *United States v. DeBeir*, 16 F.Supp.2d 592, 593 (D.Md.1998) (stating that "a finding that one of the six conditions is met is a prerequisite to detention"); *United States v. Sloan*, 820 F.Supp. 1133, 1135 (S.D.Ind. 1993) ("The Bail Reform Act of 1984 … makes pretrial detention available in six circumstances[.]").[5] Thus, a showing of danger to the community alone, in a case not falling within one of these specific circumstances, does not justify detention under the Act. *Byrd*, 969 F.2d at 110; *see also United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (noting that the Bail Reform Act limits detention based on danger to cases involving crimes of violence, offenses for which the maximum sentence is life imprisonment or death, serious drug offenses and certain repeat offenders).

The Bail Reform Act could be clearer on this issue. Section 3142(f) specifies when the court shall hold a detention *hearing* "to determine whether any condition or combination of conditions … will reasonably assure the appearance of such person as required and the safety of any other person and the community," but does not, on its face, limit *detention* to such situations. Further, § 3142(e) provides that the court should detain the defendant if it "finds that no condition or combination of conditions will reasonably assure the appearance of the person and the safety of any other

---

**5.** At the time of the decisions in *Byrd, DeBeir* and *Sloan*, § 3142(f) identified six situations permitting detention. Congress recently added a seventh—number 5 on my list above—as part of the Adam Walsh Child Protection and Safety Act. *See United States v. Lemoine*, 450

F.Supp.2d 99, 100 n. 3 (D.Me.2006). The Walsh Act further required certain conditions, including electronic monitoring, in any release order in a case involving a minor victim. 18 U.S.C. § 3142(c)(1).

person and the community," without expressly limiting the types of cases in which such detention may be ordered. However, the confusion disappears when one focuses on the language in § 3142(e) specifying that detention may be ordered only "after a hearing pursuant to the provisions of subsection (f) of this section." Thus, because the court may not order detention under § 3142(e) unless it conducts a hearing under § 3142(f), and § 3142(f) limits the cases in which such hearings may be held, it follows that the court may not order detention unless one of the circumstances in § 3142(f) exists. *See Himler*, 797 F.2d at 160.

The legislative history of the Bail Reform Act supports this construction. The Senate Report states that " 'the requisite circumstances for invoking a detention hearing in effect serve to limit the types of cases in which detention may be ordered prior to trial.' " *Id.* (quoting S.Rep. No. 225). The Report further suggests that "the drafters aimed toward a narrowly-drafted statute with the pretrial detention provision addressed to the danger from 'a small but identifiable group of particularly dangerous defendants.' " *Id.* (quoting S.Rep. No. 225); *see also Salerno*, 481 U.S. at 747, 107 S.Ct. 2095 (noting that Congress was concerned about "the most serious of crimes"). Finally, because § 3142(f) authorizes a form of "preventive detention," *Ploof*, 851 F.2d at 11, our constitutional tradition counsels in favor of a narrow construction. As the Court explained in upholding the Act in *Salerno:*

In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception. We hold that the provisions for pretrial detention in the Bail Reform Act of 1984 fall within that carefully limited exception. The Act authorizes the detention prior to trial of arrestees charged with serious felonies who are found after an adversary hearing to pose a threat to the safety of individuals or to the community which no condition of release can dispel.

481 U.S. at 755, 107 S.Ct. 2095.

Nevertheless, one court has suggested, in a thoughtful opinion, that § 3142(f) should be read to limit only when a detention hearing may be held, not the bases for detention. Accordingly, the court held that it could detain the defendant as a danger even though it convened the detention hearing under § 3142(f)(2)(A)—the flight risk category—and even though the case did not otherwise fall within one of the categories in § 3142(f)(1). *United States v. Holmes*, 438 F.Supp.2d 1340, 1348–50 (S.D.Fla.2005); [6] *see also United States v. Montoya*, 486 F.Supp.2d 996, 1004–05 (D.Ariz.2007) (citing *Holmes* on this issue but ultimately declining to detain the defendant as a danger).[7] While I agree that the initial basis for the detention hearing cited by the government should not forbid the court from later exploring other bases for detention, the *Holmes* court's conclusion that it could then detain as a danger a defendant not falling within § 3142(f)(1) seems at odds with Congress's language and with the Supreme Court's narrow interpretation of the

---

**6.** The *Holmes* court ended up detaining the defendant as a flight risk *and* a danger. *Id.* at 1354.

**7.** As *Montoya* discusses (and § 3142(f) provides), a court may order detention "in a case that involves" a crime of violence or the other circumstances in sub. (f)(1). Thus, it could be

argued that the offense charged need not be a crime of violence under a categorical approach, only that the charged acts "involve" a crime of violence. 486 F.Supp.2d at 1004–05. I need not address this issue because there is no evidence that the present case involves a crime of violence.

Act. *See Salerno*, 481 U.S. at 747, 107 S.Ct. 2095 ("The Bail Reform Act carefully limits the circumstances under which detention may be sought to the most serious of crimes."). Further, it appears that no court of appeals has adopted this position.

The *Holmes* court's notion of distinguishing the basis for the detention hearing and the grounds for a detention order does have some support in the circuits. *See United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir.1991) (holding that the defendant could be detained as dangerous despite the lack of a nexus between the offense charged and the danger he posed); *see also United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir.1990) (accepting as evidence of danger acts of domestic violence committed by an alleged drug offender). These cases provide that the court may, under § 3142(g)(4), consider the danger presented to any person or the community by the defendant, even if such danger is unrelated to the circumstances giving rise to the detention hearing under § 3142(f)(1). However, in both *Rodriguez* and *Quartermaine*, the defendant was charged with a § 3142(f)(1) offense and thus subject to detention under that provision. Further, *Salerno* supports the notion that Congress intended to limit detention based on danger to cases where there is probable cause to believe that the defendant committed a particularly serious crime:

> The Act operates only on individuals who have been arrested for a specific category of extremely serious offenses.

18 U.S.C. § 3142(f). Congress specifically found that these individuals are far more likely to be responsible for dangerous acts in the community after arrest. *See* S.Rep. No. 98–225, at 6–7.

*Salerno*, 481 U.S. at 750, 107 S.Ct. 2095. Thus, I conclude that detention as a danger is permitted only in cases covered by § 3142(f)(1).

## IV. ANALYSIS OF PRESENT CASE

■■■■ My resolution of the legal issues discussed above disposes of the government's primary arguments for detention. First, because defendant is not charged with an offense under § 3142(f)(1), he may not be detained as a danger to the community.[8] Second, defendant's status as a deportable alien does not mandate detention. Rather, he must "be treated in accordance with the other provisions of [§ 3142], notwithstanding the applicability of other provisions of law governing release pending ... deportation or exclusion proceedings." § 3142(d). Thus, it would be improper to consider *only* defendant's immigration status, to the exclusion of the § 3142(g) factors, as the government suggests.

■■■■ This leaves risk of flight, which I must consider under § 3142(f)(2) in all cases. As noted above, defendant's immigration status is relevant to this determination. However, under the particular facts of this case, I conclude that the government has not demonstrated that no

---

8. In any event, the government presents insufficient evidence of such danger. It notes defendant's prior convictions for assault with a deadly weapon and delivery of cocaine. However, the assault conviction occurred in 1993, when defendant was just twenty-two years old, and there is no indication that defendant has engaged in any violent conduct since then. Further, in the 2004 drug case, the judge initially placed defendant on probation. State authorities revoked defendant's probation only after he was deported and returned to the United States illegally to be with his wife and children. There is no indication that defendant engaged in new criminal conduct upon his return (other than being present). Therefore, the government has not shown by clear and convincing evidence that defendant presents a danger.

conditions can reasonably assure defendant's appearance.

First, defendant has strong family and community ties. He has, when out of custody, resided in the Milwaukee area for a decade. He has also been married for more than ten years and has five young children. Indeed, it appears that he returned to the United States after being deported in order to be with his family. These ties provide some assurance that if released to live with his family, defendant will not flee. Further, defendant's wife and children are citizens and seem unlikely to accompany defendant if he chose to flee. It also seems unlikely that defendant would be inclined to flee to Mexico or California, where other family members live. According to the bond study prepared by pre-trial services, defendant last saw his parents, who reside in California, over ten years ago, and he does not have contact with his siblings, most of whom reside in Mexico.

Second, the magistrate judge imposed strict conditions, including home confinement on electronic monitoring. Courts have recognized that electronic monitoring is an effective means of deterring flight. *See, e.g., United States v. O'Brien,* 895 F.2d 810, 815–16 (1st Cir.1990); *United States v. Demmler,* 523 F.Supp.2d 677, 684 (S.D.Ohio 2007); *Hammond,* 204 F.Supp.2d at 1165. The magistrate judge also required a substantial monetary bond to be posted/pledged by defendant's wife. Defendant's family will suffer a substantial financial loss if he were to flee and forfeit bond.

Third, nothing in the circumstances of the offense suggests a risk of flight. Indeed, it appears that defendant may have broken the law in order to return to his family, the same remedy he seeks in his bail request. The evidence against defendant appears to be strong, and if convicted he likely faces a significant prison sentence followed by deportation. These circumstances may create some incentive to flee, but under all the circumstances, I cannot conclude that they outweigh the factors favoring release.

The government does note some circumstances suggesting caution, including defendant's limited employment history, drug use and prior record. However, none of these circumstances convince me that he is likely to flee. Ultimately, § 3142 "does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight." *United States v. Chen,* 820 F.Supp. 1205, 1208 (N.D.Cal.1992) (citing *Portes,* 786 F.2d at 764 n. 7). I find that the conditions set by the magistrate judge in this case are sufficient.

## V. CONCLUSION

**THEREFORE, IT IS ORDERED** that the government's motion for review and revocation of the release order is **DENIED.**