UNITED STATES of America, Plaintiff,

v.

**Jim Juichang CHEN, Lucy Chen, Mike Juiming Chen, Kelly Paokui Chen, and Li Yuen Shing, Defendants.**

**No. CR–91–0296–VRW.**

United States District Court,
N.D. California.

June 18, 1992.

John Mendez, U.S. Atty., Jeffrey W. Cole, Asst. U.S. Atty., San Francisco, CA, for plaintiff.

Garrick S. Lew, Minami, Lew, Tamaki & Lee, San Francisco, CA, for defendant Mike Juiming Chen.

Scott A. Sugarman, Sugarman & Cannon, San Francisco, CA, for defendant Kelly Pao-kui Chen.

J. Tony Serra, San Francisco, CA, for defendant Li Yuen Shing.

Peter Goodman, San Francisco, CA, for Jim Juichang Chen.

John M. Runfola, San Francisco, CA, for Lucy Chen.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR PRETRIAL RELEASE AND REDUCTION OF BAIL.

WALKER, District Judge.

Presently before the court are motions regarding the continued pretrial detention of three of the five defendants in this case. Mike Juiming Chen ("Mike"), whom the court has already ordered released on conditions, moves for reduction in the amount of bail imposed by the court. Kelly Paokui Chen ("Kelly") renews her motion for pretrial release. Kelly's detention was ordered by the Ninth Circuit in January, and Kelly's present motion is based on the changed circumstances in this case since that order. Lucy Chen ("Lucy") moves for pretrial release for the first time since she was detained on June 21, 1991. For the reasons discussed below, defendants' motions are GRANTED.

### I.

The court has previously addressed these issues in connection with this case on no less than four other occasions, and the parties as well as the court have grown familiar with the law governing pretrial release. The Bail Reform Act of 1984, 18 U.S.C. §§ 3141, et seq., requires the release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community. *United States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir.1991); *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir.1985). Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in favor of release. *Gebro,* 948 F.2d at 1121; *Motamedi,* 767 F.2d at 1405. The Bail Reform Act requires release unless no combination of conditions can reasonably assure the appearance of the person and the safety of the community. 18 U.S.C. § 3142.

In determining whether to detain or release a defendant, the court is to consider (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community should the person be released. 18 U.S.C. § 3142(g).

In cases where there is probable cause to believe that the person detained has committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. §§ 801, et seq., or the Controlled Substances Import and Export Act, 21 U.S.C. §§ 951, et seq., the court is to begin its inquiry into the propriety of detention with a rebuttable presumption that no combination of conditions will reasonably assure the appearance of the person or the safety of the community. 18 U.S.C. § 3142(e). The indictment itself is sufficient to support a finding of probable cause. *United States v. Suppa,* 799 F.2d 115, 119 (3d Cir.1986); *United States v. Harris,* 732 F.Supp. 1027, 1033 (N.D.Cal.1990). The statutory presumption merely works to shift the burden of production of evidence to the defendant. *United States v. Mesher,* 707 F.Supp. 1224, 1225 (D.Or.1989); *United States v. Moore,* 607 F.Supp. 489, 497 (N.D.Cal.1985). The ultimate burden of persuasion remains on the government, *Mesher,* 707 F.Supp. at 1225, and the burden placed on the defendant to rebut the presumption is small. *United States v. Dillon,* 938 F.2d 1412, 1416 (1st Cir.1991). The defendant need only produce "some credible evidence forming a basis for his contention that he will appear and not pose a threat to the community in order to rebut the presumption." *United States v. Thomas,* 667 F.Supp. 727, 728 (D.Or.1987); *Dillon,* 938 F.2d at 1416.

Although the weight of the evidence is "the least important of the various factors," *Motamedi,* 767 F.2d at 1408, this is only true if the weight of the evidence is used to buttress a decision to detain the defendant. If the evidence against a defendant is weak, that becomes an important factor favoring release. The determination of pretrial release under § 3142 neither requires or permits a pretrial determination of guilt. *Gebro,* 948 F.2d at 1121–22. The evidence of

guilt is relevant only in terms of the likelihood that the defendant will· fail to appear. *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir.1986).

■ As to the history and characteristics of the person, the court may consider the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug and alcohol abuse, prior criminal history, and other factors. *Gebro,* 948 F.2d at 1121. Alienage is a factor which may be taken into account, but by itself cannot be determinative. *Motamedi,* 767 F.2d at 1408.

■ Nor is opportunity to flee enough to justify detention. *United States v. Himler,* 797 F.2d 156, 162 (3d Cir.1986). Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release "reasonably assure" a defendant's appearance cannot be read to require guarantees against flight. *United States v. Portes,* 786 F.2d 758, 764 n. 7 (7th Cir.1985); *United States v. Fortna,* 769 F.2d 243, 250 (5th Cir.1985); *United States v. Orta,* 760 F.2d 887, 890–92 (8th Cir.1985). *See also United States v. Tortora,* 922 F.2d 880, 884 (1st Cir.1990) (even where the issue is the safety of the community, Congress did not require guarantees in enacting the Bail Reform Act).

■ The government's burden of proof is not trivial. If the defendant can rebut the statutory presumption, the government must prove that· no combination of conditions can reasonably assure the safety of the community and the appearance of the defendant. The government must point to more than the indictment to justify detention, and must prove by clear and convincing evidence that the defendant poses a danger to the community or by a preponderance of the evidence that the defendant poses a flight risk. *Gebro,* 948 F.2d at 1121.

■ The Ninth Circuit's "preponderance of the evidence" standard in pretrial detention matters is more than the usual "tips the scales slightly" test applied in civil cases. To give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to rule against detention in close cases, applying a "clear preponderance" test. *Motamedi,* 767 F.2d at 1405–06. The court has previously addressed the meaning of the "clear preponderance" standard in its order of March 14, 1992, at 6–7.

## II.

■ In the case at bar, there can be no serious contention that release of these defendants poses a danger to the community, and the government concedes that the only issue before the court is whether a condition or combination of conditions can reasonably assure the appearance of the defendants at trial.

The court has heard evidence regarding the defendants' flight risk on numerous occasions; most recently on May 21, 1992 and again on June 17, 1992. The court is also informed by reports on the defendants prepared by the Pretrial Services Agency. Declarations have been filed by defendants' sureties, non-party witnesses and counsel for the defendants and for the government. Magistrate Judges Brazil and Brennan have also tendered rulings on some of the matters presently before the court, although circumstances have changed dramatically in the intervening months since the Magistrate Judges conducted their hearings.

The five defendants in this matter were all arrested in June 1991, in connection with what has been repeatedly described by the government as the largest heroin seizure in United States history. The United States Customs Service discovered the shipment of heroin on May 20, 1991, and within 48 hours of that discovery, was in touch with one of the national television networks, which arranged for exclusive coverage of any arrests to follow. The government facilitated the network's videotaping of events and also set up its own video surveillance equipment in and near the Fremont, California warehouse where the heroin was ultimately delivered, concealed within a shipment of plastic bags, on May 23, 1991. In the month or so that followed, the defendants were occasionally observed in or around the warehouse, but at no time was the heroin itself removed from the plastic bag shipment. On June 21, 1991,

Jim Chen and his wife Lucy, Jim Chen's sister-in-law Kelly, and Li Yuen Shing were arrested after inadvertently sighting the government's surveillance equipment inside the warehouse. As promised, the government brought in the network video crews, and the arrests led off that evening's national news broadcast. The other member of the Chen family, Mike, was originally detained on June 23, 1991, in Massachusetts, where he was on a Mandarin-language group tour of New England with one of his daughters. .

All five defendants were indicted on June 27, 1991 on charges of importation of heroin, possession with intent to distribute heroin, and related conspiracy and aiding and abetting charges. 21 U.S.C. §§ 963, 952(a), 846 and 841(a)(1); 18 U.S.C. § 2. Li Yuen Shing and Jim Chen, but not the other defendants, were further charged with foreign travel in aid of racketeering. 18 U.S.C. § 1952(a)(3). Li Yuen Shing alone, in a superseding indictment filed February 27, 1992, was charged with an additional count of using a false passport in violation of 18 U.S.C. § 1543. All of the defendants have been detained since June 1991.

On March 14, 1992, the court granted Mike's motion for pretrial release, subject to the conditions that (1) he and his three minor children be restricted to a geographical area in the Eastern and Northern Districts of California; (2) Mike report to Pretrial Services daily to provide assurance that he and the children are present within the designated area; (3) Mike and his children surrender their passports and other travel documents; (4) Mike execute a waiver of challenges to extradition from any nation; and (5) Mike provide bail, secured by real property including the Virginia home of Mike's sister, Mei Lih Chiang ("Mei Lih"). Upon representations of counsel that the proffered real property owned by Mei Lih and Mike's other sureties had an equity value of $1 million, the court set bail in that amount. In determining the amount of bail, the court has stated on more than one occasion that the purpose of the financial condition of release is to bind individuals with close ties to the defendants so that the defendants have even greater incentive to choose to appear for trial rather than cause financial ruin to close relatives and friends.

### III.

In the months since the earlier bail determinations, this case has taken a number of surprising turns, justifying reconsideration of the pretrial release issue for Mike, Kelly and Lucy. In April, the court suppressed, on two alternative grounds, all video evidence obtained by the government pursuant to search warrant. The suppressed videotapes show all three defendants in the warehouse at various times, and can be interpreted to be either inculpatory or exculpatory. Despite this ambiguity, the government refuses to proceed to trial without first attempting through interlocutory appeal to reverse the suppression of the videotapes. Trial proceedings have been stayed pending the government's appeal.

Any prediction of the length of the current stay of proceedings would be futile. The government's appeal must run on two tracks. First, the government must convince the Ninth Circuit that its ruling in *United States v. Koyomejian,* 946 F.2d 1450 (9th Cir.1991), reh en banc granted, 957 F.2d 636 (9th Cir. 1992), should be reversed. The Ninth Circuit panel hearing this case cannot overturn the existing *Koyomejian* ruling—only an en banc panel can do so. *United States v. Lucas,* 963 F.2d 243 (9th Cir.1992); *United States v. Aguilar,* 883 F.2d 662, 690 n. 25 (9th Cir.1989). Resolution of the *Koyomejian* issue in this case must lag behind the *Koyomejian* en banc panel.

Second, the panel reviewing this case must consider whether this court erred in determining after four days of evidentiary hearings that, even if the warrant authorizing video surveillance would be valid under the more lax standard for the use of video surveillance adopted by four other circuits in *United States v. Mesa–Rincon,* 911 F.2d 1433 (10th Cir.1990); *United States v. Cuevas–Sanchez,* 821 F.2d 248 (5th Cir.1987); *United States v. Biasucci,* 786 F.2d 504 (2d Cir.1986) and *United States v. Torres,* 751 F.2d 875 (7th Cir.1984), the execution of the warrants was Constitutionally defective due to the government's flagrant disregard for

the terms of the warrant. *United States v. Crozier,* 777 F.2d 1376, 1381 (9th Cir.1985). The Ninth Circuit will review this mixed question of law and fact de novo, and will review this court's underlying factual determinations for clear error. *United States v. Tham,* 948 F.2d 1107, 1111 (9th Cir.1991). Even on an expedited briefing schedule, such review cannot be instantaneous.

For this reason, the defendants now face the tragic prospect of an indeterminate length of pretrial detention. As of the date of this order, defendants have been held in prison for a few days short of an entire year and there is no end in sight to this "administrative" detention. No doubt, the government's likely appeal of any order granting a motion for pretrial release would lengthen the defendants' stay in prison by days, if not weeks. At some point, a defendant's Constitutionally-protected interests in due process and a speedy trial overshadow the other pretrial release issues. *United States v. Gelfuso,* 838 F.2d 358, 359 (9th Cir.1988). It is clear that this point has now been reached for the three defendants presently before the court.

The suppression of evidence and subsequent stay are not the only changed circumstances. Since the March 14 order releasing Mike on the conditions described above, defendants' counsel has discovered that the appraised value of the real property offered by Mike's family and friends is much lower than originally believed. Mei Lih's home in Virginia has an appraised equity value of only $179,000. The Ripon, California, home and farm property of Thon–Lian Lan, a family friend, contains only $48,668 of equity useful for bail. Even counting the value of the livestock on the farm, this property can provide no more than $257,808 towards the defendants' bail. These values fall far short of $1 million.

In response to this equity shortfall, two other members of the defendants' extended family has offered their homes to secure the release of these defendants. Andrew Chiang ("Andrew") is Mei Lih's son, and the nephew of Mike, Kelly and Lucy. Andrew, a United States citizen by birth, is a college graduate, holds a Master of Science degree from the University of California at Berkeley, works as an engineer for a Silicon Valley firm and lives in the East Bay. His home in Fremont is jointly owned by himself and his parents, Mei Lih and Sie Ling Chiang. Andrew's declaration filed in support of this motion describes a close relationship with the defendants. He pledges for bail the full $78,750 appraised equity in his home, which is his most valuable asset.

Tso Cheng Lee ("Tso Cheng"), Kelly's brother, offers for bail his home and business, the Travis Court Motel in Tracy, California. This property has an appraised value of $180,000. Tso Cheng further offers to provide housing for Mike, Kelly, Lucy and their children at the Travis Court Motel should the court grant the defendants' motions. Mei Lih, having relocated from her home in Virginia to care for her brother's children, currently stays at the Travis Court Motel, in a residence provided by Tso Cheng.

Although the absolute dollar amount available for bail is less than originally represented to the court, there can be no doubt that the real property offered by Mei Lih, Sie Ling and Andrew Chiang, Tso Cheng Lee and Thon–Lian Lan is sufficient in combination with other conditions of release to assure the appearance of Mike, Kelly and Lucy. At the hearing on June 17, Mei Lih, along with Thon–Lian Lan and his wife, appeared before the court and stated on the record that they offered their property to secure jointly the release of all three defendants and that they realized that the failure of any one of the three defendants to appear as required would result in the forfeiture of all of the pledged property and the renewed detention of the other defendants. Mike's counsel represented to the court that Andrew and Tso Cheng, the other sureties, also consented to these terms of release, and counsel offered to provide to the court declarations from Andrew and Tso Cheng expressly consenting to the terms described by the court at the June 17 hearing.

The evidence offered by defense counsel demonstrates that the defendants' family is an exceptionally close one, and the willingness on the part of the family to serve as sureties for the defendants is only one exam-

ple of these close family ties. Since the defendants' arrests, Mei Lih, Mike's sister, has been living at the Tracy, California home of Tso Cheng, Kelly's brother. Mei Lih has been tending to Mike and Kelly's motel business, caring for the three children of Mike and Kelly, and taking Lucy's three younger children, presently in foster care, to visit Lucy in prison weekly. The Pretrial Services report recently prepared for Lucy indicates that Tso Cheng has offered his home to his sister-in-law Lucy, as Lucy's home has been sold since her arrest. The court is reasonably assured that Mike, Kelly and Lucy would be unwilling to jeopardize the homes and reputations of these close relatives by failing to appear as required in this matter.

Most of the other, non-financial, factors favoring pretrial release of these defendants have not changed, and require only cursory review. All three of the defendants provide sufficient evidence to rebut the statutory presumption of pretrial detention. Mike and Kelly have strong ties to northern California, and their children speak English as a first language and are otherwise well-integrated into the community. Mike and Kelly are self-employed owners of the Tracy Motel. None of the defendants has any prior criminal record or history of drug use. The defendants' passports either have been seized or can be surrendered as a condition of release.

In addition to the indeterminate stay of proceedings, other new factors also favor pretrial release of these defendants. Even prior to the suppression of the video evidence, the court had found that the weight of the evidence against Mike was not so strong as to conclude that Mike would be likely to take flight if released. The court had also determined that the government could only barely justify the detention of either Mike or Kelly. Now the government contends that the suppression of video evidence materially affects the government's case against Mike, Kelly, and Lucy, and argues that without the tapes the government's case is less strong. That aside, the court believes that the videotape adds little to the government's case against these defendants. In any event, the suppression of the video evidence either does not affect the propensity of the defendants to flee or makes it even less likely that the defendants would flee the jurisdiction rather than seek an acquittal of the charges against them.

As the court has noted in its earlier orders, while the charges against Mike, Kelly and Lucy are serious and carry substantial penalties upon conviction, the government has yet to convict and the weight of the evidence suggests that conviction might be an uphill struggle for the government. The extraordinary events surrounding the Customs Service's interception of the heroin, the videotaping arrangements made and facilitated by the government, and the inevitable pressures to make arrests resulting therefrom assume even greater significance when weighed against the relatively shallow case against Mike, Kelly and Lucy.

Furthermore, Pretrial Services, which previously recommended Mike's release, has re-evaluated Lucy's flight risk in light of these new developments and has determined that she can be released on conditions which will reasonably assure her appearance. Lucy's pretrial release is also supported by the fact that her three children are presently wards of Contra Costa County, and may be "permanently" placed should Lucy continue to be held in pretrial detention. Such placement would certainly occur in the event Lucy were convicted of the charges against her, but the possibility that Lucy may be acquitted and reunited with her children cannot be discounted. This factor must be considered in connection with Lucy's release, even though neither the government nor the defense counsel has clearly described for the court the risk that Lucy's children could be permanently placed or even adopted should Lucy continue to be detained during the pendency of the government's appeal.

The changed circumstances support reconsideration of Kelly's status as well. In ordering Kelly's continued detention, the Ninth Circuit was unable to consider the suppression of the video evidence, the indeterminate stay, or the willingness of the Chiang family, Tso Cheng Lee, and Thon–Lian Lan to sur-

render their homes to secure Kelly's release. Those factors are now ripe for consideration.

Only one new factor tips in favor of continued detention, and it is of little consequence. In the court's March order releasing Mike, the court considered Kelly's continued detention as a factor supporting Mike's release. The court reasoned, as it also had in December when this issue was first addressed by the court, that the continued detention of either Mike or Kelly would provide additional assurance that the released spouse would appear. Release of both Mike and Kelly at this time would sacrifice this further security.

As far back as the court's December 19, 1991 order denying Mike's original motion for pretrial release, however, the court observed that the detention of either Mike or Kelly could only barely be justified, even assuming the release of the other spouse. The changed circumstances since that order, the suppression of video evidence, the indeterminate stay of proceedings, the overall uncertainty of the government's evidence against either Mike or Kelly and the pledge of homes by close friends and family members, all militate in favor of release and clearly outweigh the security lost by the release of both Mike and Kelly.

### IV.

The government has failed to show by a clear preponderance of the evidence, or clearly show by a preponderance of the evidence, that no combination of conditions can reasonably assure the appearance of these three defendants. Accordingly, Mike, Kelly and Lucy are to be released pending trial, subject to the following conditions:

A.  Mike, Kelly, Lucy, the three children of Mike and Kelly, and the three children of Lucy, are all to be restricted to travel solely within such portions of the Eastern and Northern Districts of California to be described by Pretrial Services. This area shall include only the defendants' homes and businesses, the children's schools, this court, the defendants' attorneys' offices, the location where co-defendants Jim Chen and Li Yuen Shing are detained, and the area necessary to travel among these locations.

B.  Mike, Kelly and Lucy shall be subject to electronic monitoring.

C.  Mike, Kelly and Lucy are to remain in the custody of Mike's sister, Mei Lih Chiang.

D.  Mike, Kelly and Lucy are to report daily to Pretrial Services, and are to provide assurances that they and their children are present within the designated areas.

E.  Mike, Kelly, Lucy and their children are to surrender their passports and other travel documents.

F.  Mike, Kelly and Lucy are to execute waivers of challenges to extradition from any nation where they may be found.

G.  The release of these defendants is to be jointly secured by the real property offered by Mike's sister, Mei Lih Chiang; Mei Lih's son Andrew Chiang; Kelly's brother, Tso Cheng Lee; and the family friend Thon–Lian Lan. Prior to defendants' release, defense counsel shall provide declarations from all sureties not present in court on June 17 which clearly indicate that the sureties understand the terms of release and consent to the use of their property jointly to secure the release of Mike, Kelly and Lucy.

IT IS SO ORDERED.