**UNITED STATES of America,**
**Plaintiff,**

v.

**Scott HAMMOND et al., Defendants,**

**No. 01–CR–108.**

United States District Court,
E.D. Wisconsin.

May 13, 2002.

Carol L. Kraft, for Plaintiff.

Nila J. Robinson, Appleton, WI, for Defendants.

### *DECISION AND ORDER*

ADELMAN, District Judge.

## I. BACKGROUND

Before me is the government's motion pursuant to 18 U.S.C. § 3145(a)(1) to revoke Magistrate Judge Patricia A. Gorence's April 15, 2002 order releasing defendant Scott Hammond on $135,500 bail and other conditions. Defendant is charged, along with five other alleged members of the Outlaws Motorcycle Club, with racketeering and drug-related offenses. He was arraigned on June 11, 2001, and temporarily detained. On June 19, 2001, Judge Gorence held a detention hearing at which the government requested detention. However, Judge Gorence decided that defendant could be released if $150,000 bail was posted and other conditions met. The government did not appeal the release order, but defendant was unable to raise bail and has remained in custody.

Defendant subsequently moved to modify the bail, and on April 11 and 15, 2002, Judge Gorence held an evidentiary hearing on the motion. Defendant proposed that the bail be reduced to $135,500 and that security be posted by various individuals as follows:[1] Gary and Wanda Fonk—$9,700 (property); John Tapplin—$33,800

---

1. I will refer to these individuals as "the post-    ers."

(property); Timothy Titus—$32,000 (cash); Tim and Karen Bergsbaken—$40,000 (property); and Rick and Carol Sands— $20,000 (property); for a total of $135,500.

■ At the hearing the posters were questioned about a variety of matters including their relationship with defendant, their connection to the Outlaws, whether they were promised reimbursement if their assets were forfeited, their ownership of motorcycles, and their attendance at events for motorcyclists. *See United States v. Nebbia,* 357 F.2d 303 (2d Cir. 1966).[2]

Gary Fonk testified that he had known defendant for four or five years and that his wife and defendant's wife are best friends. He acknowledged having attended events at the Outlaws' clubhouse in Park Falls, Wisconsin but denied having talked to any Outlaw about posting bail for defendant or having been promised that the Outlaws would reimburse him if his property were forfeited. Wanda Fonk testified that she sees defendant's wife once a week and talks to her about twice a week. She also denied discussing the matter of defendant's bail or the possibility of reimbursement with any Outlaw.

John Tapplin testified that he had known defendant for some time. He denied that he was an Outlaw or that the Outlaws had suggested that he post bail for defendant or promised to reimburse him if his property were forfeited. He stated that he was a member of the Association of Recovering Motorcyclists ("ARM"), a group of motorcyclists who no longer use drugs or alcohol.

Timothy Titus testified that he had never met defendant but had heard about his situation through friends. He stated that he had not been asked to post bail or been promised reimbursement if bail were forfeited. He explained that he decided to post bail because it didn't seem right that a married man with a family be sitting in jail. Doreen Titus testified that she did not know defendant but was willing to go along with her husband, and had no expectation of reimbursement in the event of forfeiture.

Tim Bergsbaken testified that he had met defendant twice, and that his brother Bruce asked him to post bail for defendant. (Apparently the government objected to Bruce posting bail because he was associated with the Outlaws.) Bergsbaken stated that he did not expect to be repaid if the bail were forfeited. Karen Bergsbaken testified that she agreed to post bail after discussing the matter with her husband and Bruce, and that to her knowledge Bruce had been friends with defendant for many years.

Rick Sands testified that he did not know defendant but was a friend of defendant's friend, Dave Ulrich—an Outlaw. Sands testified that he provided bail after Ulrich suggested it and after talking to his wife because defendant needed to provide for his family. He testified that he did not expect to be reimbursed if his property were forfeited. Carol Sands testified that she was going along with her husband.

The government then called Special Agent Sandra Devalkenaere of the Bureau of Alcohol, Tobacco and Firearms, who testified that the Outlaws often raised money for members who had been arrested and had a code requiring assistance to members who ran from the law. However, she could not state that any of the funds or property proffered in defendant's case came from Outlaws or that any promises

---

**2.** "A *Nebbia* hearing is conducted to determine the source of funds deposited as bail bond. The hearing is conducted to ensure that the funds provided are adequate to com-

pel the defendant to return." *United States v. Eschweiler,* 782 F.2d 1385, 1386 n. 2 (7th Cir.1986).

of reimbursement had been made. She also testified that about a year before defendant was arrested she approached him about the Outlaws investigation and advised him that "he was looking at charges." (Apr. 15, 2002 Tr. at 163) Defendant did not flee thereafter.

At the close of testimony Judge Gorence granted defendant's request to reduce the bail to $135,500 and also required as conditions of release that defendant be subject to electronic monitoring, restrictions on travel, random urine tests, regular reporting to Pre–Trial Services, and that he not associate with members of the Outlaws.

The government requested a stay of the release order pending appeal to this court and subsequently moved that the order be revoked. I granted the stay and now consider the request for revocation.

The government makes three arguments. First, it contends that defendant is a danger to the community. It states that defendant is charged with serious offenses and with being a member of a criminal enterprise that has committed violent crimes. Second, the government argues that defendant is a flight risk. It claims that other members of the Outlaws have fled or absconded and that there are many Outlaws chapters in the United States and Europe, whose members are expected to harbor fugitive "brothers." Third, the government claims that the bail is insufficient, that defendant's ties to the posters are inadequate to assure his appearance, and that there is circumstantial evidence that the posters will be reimbursed by the Outlaws in the event of a bail forfeiture.

## II. DISCUSSION

### A. Applicable Legal Standards

#### 1. Bail Standard

■ A defendant charged with an offense may be released on personal recognizance, released on conditions, temporarily detained to permit revocation of conditional release, or detained. 18 U.S.C. §§ 3142(a) & (e). Release may be denied only when there are no conditions that will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. § 3142(e); *United States v. Chen,* 820 F.Supp. 1205, 1207 (N.D.Cal. 1992). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in favor of release." *Id.* (citing *United States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir.1991); *United States v. Motamedi,* 767 F.2d 1403, 1405 (9th Cir.1985)).

In determining whether there are conditions of release that will reasonably assure the appearance of the defendant and the safety of the community, the court considers: (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g). The court may also inquire into the source of the property offered as collateral to secure a bond and decline to accept property that will not reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(g)(4).

■ If the judicial officer finds probable cause to believe that the defendant committed a drug offense for which the maximum penalty is ten years or more of imprisonment, a rebuttable presumption arises that no condition(s) will reasonably assure the appearance of the defendant and the safety of the community. 18 U.S.C. 3142(e). An indictment charging such an offense is sufficient to trigger the presumption. *United States v. Dominguez,* 783 F.2d 702, 706 n. 7 (7th Cir.1986).

The presumption shifts the burden of production to the defendant to come forward with some evidence that if released he will not flee or endanger the community. *United States v. Portes*, 786 F.2d 758, 764 (7th Cir.1985). "The burden of production is not a heavy one to meet . . . ." *Dominguez*, 783 F.2d at 707. "Any evidence favorable to a defendant that comes within a category listed in § 3142(g)" can suffice. *Id.* Once rebutted, the presumption nevertheless remains in the case as an evidentiary finding militating against release, but the ultimate burden of persuasion rests with the government. *Id.*

### 2. Standard of Review of Decision of Magistrate Judge

■ When the decision of a magistrate judge is appealed to the district court under section 3145(a), the district judge conducts a *de novo* review. *Portes*, 786 F.2d at 761; *United States v. Jones*, 804 F.Supp. 1081, 1086 (S.D.Ind.1992). The judge may "start from scratch" and hold a new hearing or review the transcripts of the proceedings before the magistrate. *United States v. Torres*, 929 F.2d 291, 292 (7th Cir.1991). Because the magistrate judge conducted detailed evidentiary hearings in this case, and because the parties have not requested that I take additional testimony,[3] I will review the transcripts in making my decision.[4]

### B. Effect of June 19, 2001 Decision

At the original June 19, 2001 detention hearing Judge Gorence concluded that de-

fendant had rebutted the presumption of detention and that there were conditions that would allow his release. She thus set bond at $150,000 and imposed certain additional conditions.

The government did not appeal Judge Gorence's original release order. The order of April 15, 2002 that it did appeal merely reduced the bail from $150,000 to $135,500. In light of the government's argument that defendant should be detained, it is curious that the government did not appeal the June 19, 2001 release order. It is not to the government's credit that it seeks detention in this court only after defendant, apparently at great effort, was able to cobble together enough money and property to obtain his release.

■ If the government regarded defendant as a danger or a flight risk, one would think that it would have appealed the initial release order. Under the Bail Reform Act, the government may seek "review of all releases *irrespective of whether the defendant could or could not comply with the conditions of release.*" *United States v. Delker*, 757 F.2d 1390, 1394 (3d Cir. 1985) (emphasis added). Had I agreed that detention was appropriate, a great deal of effort on the part of many people could have been avoided, and defendant would not in false hope have continued to pursue release options. Judge Gorence held extensive hearings concerning the source of the money and property to be posted, taking up her time and that of counsel and witnesses.[5] Certainly, as a

---

**3.** The government has requested that Judge Gorence reopen the detention hearing based on new information.

**4.** I have reviewed the transcripts of the June 19, 2001, April 11, 2002, and April 15, 2002 hearings, as well as the pertinent exhibits.

**5.** Defendant's counsel submitted bond proposals on or about October 22, 2001, November 20, 2001, December 13, 2001, February

28, 2002, and April 10, 2002, with detailed documentary support. The government continued to seek more information on the sources of the proposed property and money, then requested a *Nebbia* hearing. It appears that several of the witnesses traveled over 300 miles to attend the hearing. And because defendant's counsel is CJA appointed, these additional proceedings have come at significant cost to the taxpayers.

matter of judicial economy, not to speak of fairness, the government's failure to appeal until after defendant made bail is less than optimal.

While the government timely appealed Judge Gorence's April 15, 2002 order, it did not do so with respect to her June 19, 2001 order. Section 3145(a), under which the government may seek review of a release order, contains no deadline for the government to appeal.[6] Generally, any objection to or appeal from a magistrate's decision must be filed within ten days. 28 U.S.C. § 636(b)(1). I have found no case suggesting a specific deadline for § 3145 motions, but it is surely less than ten months. Thus, the government has forfeited its right to appeal the order of June 19, 2001.

But has the government also waived the right to argue that defendant should be detained? The cases discussing waiver of the right to seek detention have focused on the government's position at the initial appearance and on whether the initial detention hearing was timely held. *See, e.g., United States v. Montalvo–Murillo,* 495 U.S. 711, 717, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990) (holding that failure to comply with the first appearance requirement of § 3142(f) does not defeat government's authority to seek detention); *Dominguez,* 783 F.2d at 705 (holding that government may make motion for detention at defendant's first appearance in charging district even if it did not so move in the arresting district); *United States v. Maull,* 773 F.2d 1479, 1484 (8th Cir.1985) (en banc) (holding that district court on section 3145 appeal had the authority to order detention even if the government had not argued for detention at the initial appearance before the magistrate); *United States v. Resek,* 602 F.Supp. 1126, 1129 (S.D.N.Y.1985) (holding that government may not request a deten-

tion hearing for the first time ninety-four days after first appearance and only after defendant was able to make bail).

In this case, the government did seek detention at the first appearance in this district. *See* 18 U.S.C. § 3142(f)(2). The question is whether, by failing to timely appeal an adverse decision on its request, the government is now barred from seeking detention. For two reasons I conclude that it is not.

First, in *Montalvo–Murillo,* the Court held that failure to comply with the time limits for detention hearings under section 3142(f) does not deprive the government of the authority to later seek detention. *Montalvo–Murillo,* 495 U.S. at 717, 110 S.Ct. 2072. The Court noted that the safety of society should not be sacrificed because of the government's failure to timely act. *Id.* at 720, 110 S.Ct. 2072.

Second, the magistrate's April 15 release order is properly before me, and my review is *de novo. Portes,* 786 F.2d at 761. Implicit in this standard of review is that the "district court must have available the options open to the magistrate." *Maull,* 773 F.2d at 1482. This includes the option of ordering detention if deemed necessary. *See also Gebro,* 948 F.2d at 1120 (holding that district court may sua sponte review magistrate's release order and order detention).

I will thus decide, first, whether any conditions will reasonably assure the appearance of the defendant and the safety of the community, and, second, whether the conditions imposed by the magistrate judge are adequate and appropriate.

## C. Danger to the Community

When the government asserts that a defendant must be detained because

---

**6.** As a practical matter, such appeals will usually be taken immediately.

he is dangerous it bears the burden of proving "by clear and convincing evidence that no condition or set of conditions will ensure the safety of the community." *Portes,* 786 F.2d at 764. Defendant in this case was indicted on a charge that creates a rebuttable presumption of detention. The burden of production thus shifted to him to rebut the presumption. At the June 19 detention hearing Judge Gorence found that defendant had carried his burden. In the present motion the government does not contest this finding, nor could it given its failure to timely appeal. *See United States v. Mastrangelo,* 890 F.Supp. 431, 435 (E.D.Pa.1995) (finding that government waived the requirement that defendant rebut the presumption).

Even if the issue were properly before me I would conclude that defendant has met his burden, which "is not a heavy one." *Dominguez,* 783 F.2d at 707. Defendant proffered evidence concerning his family (he is married with minor children), employment (he works as a fishing guide—and apparently a well respected one), and substantial ties to the state (all or nearly all of his family is in Wisconsin). He seems to be respected by neighbors and business associates. His prior criminal record is minimal, and his last conviction was many years ago. "This evidence of economic and social stability, coupled with the absence of any [recent] criminal record, at least suggests that defendant[ ] would be less likely to continue to engage in criminal activity while on pretrial release." *Id.* Defendant thus met his burden of rebutting the presumption. However, the presumption "remains in the case as an evidentiary finding militating against release, to be weighed along with the other evidence relevant to the factors listed in § 3142(g)." *Portes,* 786 F.2d at 764.

In its motion, the government presents the evidence that it believes will be adduced at trial, most of which is detailed in the twenty-five page indictment. However, defendant is not expected to " 'rebut' the government's showing of probable cause to believe he is guilty of the crimes charged. That showing is not really at issue once the presumptions in § 3142(e) have been properly triggered ...." *Dominguez,* 783 F.2d at 706.

> If the defendant can rebut the statutory presumption, the government must prove that no combination of conditions can reasonably assure the safety of the community and the appearance of the defendant. The government must point to more than the indictment to justify detention, and must prove by clear and convincing evidence that the defendant poses a danger to the community ....

*Chen,* 820 F.Supp. at 1208.

The government has failed to meet its burden. It essentially presents the allegations in the indictment and an incident described in the trial of another Outlaws case. However, it presents no details regarding defendant's alleged dangerousness. For example, it offers no evidence concerning whether defendant possesses or has access to any dangerous weapons, whether weapons were found on his person at the time of his arrest, or whether he would pose a risk to any specific person if released. *Cf. Portes,* 786 F.2d at 765. The government does not persuasively explain why defendant is too dangerous to be released, and it cannot obtain detention simply by associating defendant with a dangerous organization such as the Outlaws. *See United States v. Patriarca,* 948 F.2d 789, 791–92 (1st Cir.1991) (affirming order of release despite defendant's status as Mafia boss when no specific evidence of his dangerousness was presented).

Moreover, defendant presented evidence tending to show that he is not a danger. He has a stable residence and employment, his prior criminal record is minimal

and rather old, and he has a wife and minor children with whom he resides. The government does not contest this evidence. Nor does it allege that defendant previously committed new offenses while released on bond or that he was on probation, parole, or other court supervision at the time of his arrest for the instant offenses.

Significantly, the government does not attempt to explain why the conditions imposed by Judge Gorence will not assure the safety of the community. "A defendant cannot be detained as dangerous under § 3142(e), even if the presumption is not rebutted," unless a finding is made that no release conditions will reasonably assure the safety of the community. *Dominguez*, 783 F.2d at 706–07. Judge Gorence ordered electronic monitoring, restrictions on travel, and reporting to Pretrial Services, among other conditions. *See United States v. O'Brien*, 895 F.2d 810, 815 (1st Cir.1990) (discussing effectiveness of electronic monitoring). Defendant will be strictly monitored while on release.

The government claims that the evidence of guilt is strong regarding all defendants in the case. Defendant counters that the evidence is more persuasive in the telling than in the discovery provided to date. This is, however, " 'the least important of the various factors.' " *Chen*, 820 F.Supp. at 1207 (quoting *Motamedi*, 767 F.2d at 1408). Moreover, detention hearings are not be mini-trials. *Delker*, 757 F.2d at 1396. Based on the present record I cannot conclude that either side benefits from the predictions of counsel (colored as they may be by the use of an advocate's pen) as to the outcome of a trial.

Finally, the government cites the district court's opinion following remand in *United States v. Dominguez*, 629 F.Supp. 701, 711 (N.D.Ind.1986), where the court discussed the dangers posed by drug traffickers in general. However, "defendant can hardly be expected, after all, to demonstrate that narcotics trafficking is not dangerous to the community." *Dominguez*, 783 F.2d at 706. The government offers nothing more concerning this defendant than the allegation that he is an "entrenched" drug dealer who has frequently provided cocaine and sometimes prescription drugs to members of the Outlaws. In light of the government's burden and given the evidence presented by defendant, this is insufficient.

■ In sum, I conclude that even in light of the presumption of detention the government has not shown by clear and convincing evidence that defendant is dangerous and that no conditions of release will reasonably assure the safety of the community. *See United States v. Lopez*, 827 F.Supp. 1107, 1109–11 (D.N.J.1993) (allowing release of alleged drug trafficker on posting of property from five families where defendant had strong family and community connections, was long time resident of the state, and would be subjected to home detention and monitoring).

**D. Risk of Flight**

■ When the government claims that a defendant must be detained as a flight risk it bears the burden of proving by a preponderance of the evidence that no conditions will reasonably assure his appearance in court. *Portes*, 786 F.2d at 765. The government's argument on this point is essentially that defendant is a member of an enterprise with chapters across this country, Europe, and Australia; that defendant possessed lists of Outlaws chapters and phone numbers at the time of his arrest; that members are expected to harbor fugitive brothers; that fundraisers have been held for defendant; that defendant faces a lengthy prison term; and that other defendants in this and the previous Outlaws prosecution have absconded.

■ However, the government does not address several facts which cut against

its argument. One year before his arrest ATF agents advised defendant that he was facing charges, and he did not abscond. This is strong evidence that defendant is not inclined to flee.[7] *See Patriarca,* 948 F.2d at 793 (finding that defendant Mafia boss was not a flight risk, despite ability of Mafia to facilitate flight, when he did not flee despite knowledge that he was under FBI surveillance and could be indicted). Secondly, defendant has strong family ties and few personal resources. *See id.* at 792 (noting defendant Mafia boss's family ties); *O'Brien,* 895 F.2d at 816–17 (noting that defendant's indigence inhibited his ability to travel far, and that defendant had wife and child).

The mere opportunity to flee is not enough to justify detention. *Chen,* 820 F.Supp. at 1208. "Section 3142 does not seek ironclad guarantees, and the requirement that the conditions of release 'reasonably assure' a defendant's appearance cannot be read to require guarantees against flight." *Id.* (citing *Portes,* 786 F.2d at 764 n. 7). The government has not established that the Outlaws have provided money to fund defendant's flight. Further, membership in an organization that has in the past helped members to flee is insufficient absent evidence that *this* member is inclined to flee. *Patriarca,* 948 F.2d at 793. Given the strict conditions of release imposed, defendant's appearance is reasonably assured. In sum, the government has failed to sustain its burden of proving that no conditions of release will reasonably assure

defendant's appearance in court.[8] *See Lopez,* 827 F.Supp. at 1111–12.

### E. Sufficiency of the Security Offered

Finally, the government argues that the security offered is insufficient because the posters lack substantial ties to defendant, and there is circumstantial evidence that the Outlaws intend to repay the posters if their property is forfeited. Before allowing release on bail, the court may seek to assure itself that proposed posters or sureties are financially responsible and have "moral suasion" over the defendant. *See United States v. Batista,* 163 F.Supp.2d 222, 226 (S.D.N.Y.2001).

#### 1. Posters' Ties to Defendant

It is true that several of the posters do not personally know defendant. However, this is not an adequate reason to deny release. First, not everyone posting property or money needs to have strong personal ties to the defendant, so long as there are adequate assurances of financial responsibility on the part of those putting up money and moral suasion over the defendant by one or more of those individuals. *Id.* at 226. In the present case, defendant presented evidence of strong personal ties to the Fonks and John Tapplin. These individuals have known him for some time, live in the same area that he does, and stand to lose a considerable amount if he absconds. Thus, they exercise sufficient "moral suasion" to reasonably assure defendant's appearance.[9]

---

7. The fact that other members of the Outlaws were successfully prosecuted and sentenced to long prison terms in the previous Outlaws prosecution in this district rebuts any contention that defendant may have thought the visiting ATF agents were bluffing, and that he had nothing to worry about.

8. I also note that defendant has been in custody for almost one year, and no trial date has been set. Under these circumstances, the court must consider less restrictive alterna-

tives to detention. *See United States v. Infelise,* 934 F.2d 103, 105 (7th Cir.1991); *see also United States v. Warneke,* 199 F.3d 906, 908–09 (7th Cir.1999) (expressing deep concern, in previous Outlaws prosecution, that defendants spent lengthy period of time in pre-trial detention).

9. The government does not argue that the posters lack financial responsibility. In any event, I find that defendant has made a suffi-

Second, all of those who offered to post money or property were closely questioned on their motives and were advised of the consequences. They appear to be entering into this matter with their eyes open. Finally, Judge Gorence ordered a list of additional conditions to assure defendant's appearance, including electronic monitoring and travel restrictions. The government never explains why it regards these conditions as inadequate.

### 2. Reimbursement by the Outlaws

The government alleges that the posters have been offered reimbursement by the Outlaws should their money or property be forfeited. However, it has presented no evidence of this. All of the posters denied this allegation at the *Nebbia* hearing, and the government has presented no rebuttal evidence. The statements of some of the posters may raise questions, but the government cannot meet its burden on this issue with mere suspicion. *See Lopez,* 827 F.Supp. at 1111 (rejecting similar contention where government produced no evidence that posters had been recruited by drug organization, and stating that "the Court is unwilling to engage in such cynicism absent some cause").

The government seems to draw considerable inferences from the fact of motorcycle ownership. At the *Nebbia* hearing, it questioned the male posters extensively about whether they owned motorcycles and had attended motorcycle events. It is not illegal or suspicious to own a motorcycle. And attending events sponsored by or associating with motorcycle clubs (including the Outlaws) does not per se render one ineligible to post bail in a federal court.

It is surely right for the government to be concerned about the possibility that the

cient showing that the posters are financially responsible, with sufficient assets to cover

security emanates from an illegitimate source and is merely a "business expense" for a criminal enterprise, *United States v. DeMarchena,* 330 F.Supp. 1223, 1226 (S.D.Cal.1971), which may be willing to post the collateral solely to enable its associate to flee, *United States v. Dussuyer,* 526 F.Supp. 883 (S.D.Fla.1981). But there is no evidence of this in the record.

### III. CONCLUSION

Thus, I make the following findings: defendant is charged with a crime that creates a rebuttable presumption of detention, shifting the burden of production to defendant. The magistrate judge found that defendant rebutted that presumption at the June 19, 2001 hearing, and the government did not timely appeal. In any event, I find that defendant met his burden of rebutting this presumption.

The government has not shown that no conditions of release will reasonably assure the safety of the community and the appearance of the defendant. The government has not proven by clear and convincing evidence that defendant must be detained as a danger to the community. The government has not proven by a preponderance of the evidence that defendant is a flight risk.

The government has also failed to show that the conditions imposed by Judge Gorence are insufficient or that the posters lack sufficient moral suasion over the defendant or are merely fronts for the Outlaws. I therefore decline to modify Judge Gorence's release order of April 15, 2002.

**THEREFORE, IT IS HEREBY OR-DERED** that the government's motion to revoke Judge Gorence's order of April 15,

their responsibilities in this matter.

2002 is **DENIED**, and the stay of her order of release is **VACATED**.