**UNITED STATES of America,**
**Plaintiff,**

v.

**Frank CALABRESE, Sr., Defendant.**

**No. 02 CR 1050–4.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 19, 2006.

John Joseph Scully, United States Attorney's Office, Chicago, IL, for Plaintiff.

Joseph R. Lopez, Joseph R. Lopez, Ltd., Chicago, IL, for Defendant.

## *DETENTION ORDER*

ZAGEL, District Judge.

■ Defendant, Frank Calabrese, Sr., detained by virtue of a prior sentence of imprisonment, seeks the setting of a bond since his prior sentence has expired. The Government moves for continued detention on statutory grounds and has presented evidence in support of its position. In response, Defendant (or his relatives) offers substantial assets for bond, and he expresses complete willingness to comply with stringent conditions of release. Detention, if ordered, is authorized by 18 U.S.C. § 3142(f)(1), since the case involves

crimes of violence as defined by 18 U.S.C. § 16(b).

The prosecution alleges that Defendant is a member of an established organized crime syndicate, which over many years and on many occasions had persons murdered to advance its criminal purposes. The organization itself is described in several reported cases. *See, e.g., United States v. Zizzo*, 120 F.3d 1338 (7th Cir. 1997) (hereinafter *"Zizzo"*); *United States v. Rainone*, 32 F.3d 1203 (7th Cir.1994) (hereinafter *"Rainone"*). In this case, there is a rebuttable presumption in favor of detention because the charges carry a potential life sentence. *See* 18 U.S.C. §§ 3142(f) and 3142(f)(1)(B).[1]

To obtain detention, the prosecution must demonstrate that there is either a serious risk that Defendant will flee or a serious risk that he will obstruct (or attempt to obstruct) justice or threaten, injure, or intimidate (or attempt to threaten, injure, or intimidate) a prospective witness.[2] 18 U.S.C. § 3142(f)(2)(A)-(B). The prosecution may do this by offering evidence in a manner unconstrained by the normal rules of admissibility. 18 U.S.C. § 3142(f). In practical terms, this allows the prosecution to prove what its witnesses would say by offering the testimony of an investigator who tells the court what the witnesses have reported to him. This type of hearsay is heard routinely by grand juries and at preliminary hearings.

In order to find a serious risk to the safety of prospective witnesses, I may rely only on facts that are supported by clear and convincing evidence. *Id.* In other words, I must be persuaded by clear and convincing evidence that there is no condi-tion or combination of conditions that will reasonably assure the safety of a person or the community. *Id.* Four factors govern the decision of whether Defendant should be detained. 18 U.S.C. § 3142(g).

### 1. The nature and circumstances of the offenses charged

The indictment charges Defendant (and many others) with participation in an organized crime conspiracy lasting from the mid–1960's through the present day. The conspirators, as alleged here and reported in decisions of other courts, were in the business of extorting money, operating illegal gambling ventures, making usurious loans, and collecting loans, gambling debts, and other money by threatening and using force. The organization allegedly employed intimidation, bribery, and murder to protect itself against witnesses and turncoats within its ranks. Without question, the allegations portray an organization that threatens the safety of individuals; similarly, the crimes alleged are among the most serious crimes to threaten the safety of the community.

### 2. The weight of evidence against Defendant

The evidence against Defendant will consist of the testimony of another defendant and alleged co-conspirator who will directly implicate Defendant in the racketeering conspiracy. This is apparent from a prior detention hearing involving other defendants. What the prosecution offers here, with particularity, are Defendant's own words electronically recorded and preserved.

---

1. Here the potential of life in prison is particularly strong. Defendant is nearly 70 years old and is in less than perfect health for his age. Even a sentence at the low end of the discretionary guidelines would, in effect, incarcerate him for the rest of his life.

2. The actual statutory language is broader than this phrasing, but the Prosecution relies solely on these provisions.

■ Before turning to a condensed summary of these recordings, I note that the weight of the evidence is significant in two respects. Very strong evidence, when coupled with the possibility of a very long sentence, is relevant to the likelihood of the accused's non-appearance at trial. Flight is always more likely when a defendant has little or nothing to lose by absconding. The weight of the evidence is also relevant to the question of whether detention is justified by the need to protect the community.[3]

On the question of Defendant's membership in the alleged RICO organization, he describes in the recordings a ceremony by which one joins the organization. He might argue that he was not describing the ceremony that marked his own membership; but according to his own state-

---

**3.** The prosecution correctly questions precedent instructing that the "the weight of the evidence is the least important" of the factors. *See, e.g., United States v. Motamedi,* 767 F.2d 1403 (9th Cir.1985). This rule was first articulated in a Ninth Circuit case reversing a district court's decision to deny bond to a defendant accused of perjury. *See United States v. Honeyman,* 470 F.2d 473 (9th Cir. 1972). *Honeyman's* observation that the "weight of the evidence" criterion should receive the least weight among the § 3142(g) factors turned primarily on the nature of the alleged crime. *See id.* at 474–75 ("[w]e think that the least weight should be given to the weight of the evidence against the accused. Certainly in this case the offense charged, perjury, while a serious offense, is not of a type that indicates that the defendant is a danger to the community, nor do we think that it establishes a *prima facie* case for the assumption that he is likely to flee").

Subsequent Ninth Circuit opinions seized on *Honeyman's* language but without discussing the justification for favoring one § 3142(g) factor more heavily than the others. *See, e.g., United States v. Gebro,* 948 F.2d 1118, 1121 (9th Cir.1991). Some courts within this district reiterate *Honeyman's* "weight of the evidence" rule. *See, e.g., United States v. Hammond,* 204 F.Supp.2d 1157 (E.D.Wisc.2002). In so doing, the rule is traced not to its origins but to *United States v. Chen,* 820 F.Supp. 1205 (N.D.Cal.1992). Notably, *Chen* significantly limits the scope of *Honeyman's* rule:

Although the weight of the evidence is the least important of the various factors ... this is only true if the weight of the evidence is used to buttress a decision to detain the defendant. If the evidence ... is weak, that becomes an important factor favoring release. The determination of pretrial release under § 3142 neither requires or permits a pretrial determination of guilt. The evidence of guilt is relevant only in terms of the likelihood that the defendant will fail to appear.

*Id.* at 1207–08 (internal quotations and citations omitted). *See also United States v. Cardenas,* 784 F.2d 937, 939 (9th Cir.1986) ("the evidence of guilt is relevant only in terms of the likelihood that the person will fail to appear or will pose a danger to the community"). Even in *Motamedi,* the court's primary concern was that the district court relied too heavily on the weight of the charges against the defendant and the government's assertions of his guilt, such that the district court veered too close to a pretrial determination of guilt. 767 F.2d at 1408.

I do not find support for minimizing the "weight of the evidence" factor in Seventh Circuit cases. The statute does not instruct that one or another factor is less important. Moreover, it is difficult to see how this factor could always be less important than the others. Were there very strong evidence that a defendant was a serial rapist or killer, this factor alone might outweigh all other factors in determining whether detention is required to protect the community. The near certainty of conviction and life sentence of an accused would be a very important factor in considering whether the accused would flee, particularly when combined with evidence that the accused had a large bank account in a country that will not extradite to the United States. Judicial dicta stating that the weight of evidence is least important is, in my view, an off-key but well-intentioned attempt to remind us of the rule that detention is not to be ordered simply because we are convinced that the accused is guilty; we are to detain only if we find that there is an unacceptable risk of flight or danger to others. On those questions, the weight of evidence may or may not be important, but no absolute rule governs.

ments he was witness to a secret ritual, which implies his membership. On another occasion he describes the promotion of someone else to a higher rank in the organization, and in a third conversation he describes the procedure for resolving claims to various income-generating operations by competing constituent groups. His consciousness of the illegality of his actions is expressed in his (later justified) concern that his own brother was cooperating with law enforcement. His statements also demonstrate that he was not interested in retiring from criminal activities such as illegal gambling operations.

On the question of his participation in the specific acts alleged in the indictment, Defendant describes how one murder victim's corpse was concealed. He also says that he and his brother "did" one murder ordered by his superiors. In another case, a target was killed, along with his wife (an un-intended victim). Defendant, seeking to exculpate himself in the murder of the wife says, "I wasn't even in that vehicle. I was in the lookout vehicle." Defendant is quite explicit about his role in the slaying of two other persons—again, one the target and the other a man who happened to be in the same car. "I was the one talkin [sic] to them [the shooters] ... here's what you gotta do.... And I said, take your time now. Don't rush. Walk up to that car ... get the other guy first." He also speaks of the weapons used in the crime: "they emptied them out. They, I made sure...." His tone of voice undermines his

present petition. If he is speaking the truth, he shows no consciousness of the gravity of the acts he describes.[4]

While in theory Defendant could offer innocent explanations for these conversations, it is difficult to imagine what they might be. Even if Defendant were to claim that he was simply puffing—pretending to be more important than he was or even pretending to be part of an organized criminal enterprise—that argument must be dismissed in light of his prior racketeering conviction. The weight of the evidence is very strong.

### 3. Defendant's history and characteristics

Defendant was convicted of racketeering, mail fraud, conspiracy to defeat the IRS, and extortion.[5] Defendant has little education and is not in good health. He apparently has few conventional assets (apart from the possibility of a hidden stash of cash or other assets), but his spouse has homes in Illinois, Florida and Wisconsin. He has no significant employment history. His lifestyle is difficult to explain except as a result of a life lived outside the law.

The Prosecution offered evidence that Defendant compiled (at some point in the past) a fairly large collection of false identification documents including driver's licenses, birth certificates, social security cards and security guard credentials bear-

---

4. Under existing law, the relatives of the alleged victims of the accused may make submissions to the court. The precise weight to be given such statements is unclear. They are not evidence in the traditional sense of the word, and I do not consider them evidence. A better analogy might be to an allocution by a defendant before sentencing, or even the unsworn statement by a defendant, which used to be permitted at criminal trials in Georgia. In any event, I found an apt evaluation of Defendant's state of mind in one such

letter submitted to me. At the hearing, I perceived a complete absence of appropriate moral sentiment in Defendant's tone during his discussion of the killing of a man named Ortiz. I learned subsequently that Ortiz's son apparently made the same observations, as he wrote to me that he heard "Mr. Calabrese brag and find humor in the assassination of my father."

5. The 1997 sentence for those offenses just expired, leading to the present motion.

ing nine names, none of them his. Defense counsel stresses that these documents are not current; but Defendant has been in custody for a long time. There is also evidence that Defendant kept hundreds of thousands of dollars in cash in safe deposit boxes, stockpiled medications for his medical conditions, and had experience hiding equipment and supplies for use in criminal activities. He also built a vehicle with concealed compartments for hiding cash. On prior occasions he left Illinois to avoid legal obligations.

In simple terms, Defendant has led a covert life. This does not mean he is necessarily a flight risk. During the prior prosecution he was released on bond and he honored his obligation to appear at trial. This is a very significant factor favoring his release today.

Nonetheless, I find that his position now is quite different from his position in the mid–1990's. After that conviction he could reasonably believe that he would eventually be released and resume his life outside prison, even if what he looked forward to was helping a relative to start a sports book. He might even have entertained early hopes that he might be acquitted or have hoped to successfully appeal a conviction.

At the hearing both the prosecution and defense counsel referred to a passage in the recorded conversations where, speaking to his son, Defendant says:

> [Y]eah, anything would be good, Frank. If I could save a year, if I could save a half-year. I mean, at my age, any fucking thing is good. You know that? I could have left—I didn't have to come in here [a federal prison], I could have left. That ain't my m.o., son I've never abandoned my family yet and I'm not going

to abandon them now. I could just see the turmoil that everything would have been in if I did that. The G had brought so much heat down on everybody in the family, it would have been pathetic. They'd be living in fucking misery.

Defense counsel emphasized that Defendant is firm in his determination not to inflict harm on his family by fleeing. The prosecution stressed Defendant's strong desire to save a year, or even a half of a year, in prison.

Both interpretations are plausible, but I heard the remarks to be an expression of Defendant's partial regret that he did not flee. At the time, his earlier decision was made with the clear expectation that he would emerge from prison. He can no longer reasonably entertain that expectation. Today, a conviction means that he will likely live the rest of his life in prison.[6]

Under these circumstances, a rational man in Defendant's position would find few reasons not to leave the jurisdiction. Though flight is not inevitable (Defendant, even if he expects the worst, may choose to spend his time out of jail with his family in familiar surroundings), I find that it is far more likely he will abscond. Defendant could flee and still maintain contact with his family, though not in familiar surroundings. Alternatively, out of concern for his family he might avoid contact with them. Though he is likely to be recaptured if he remains in this country or flees to a place from which he can be extradited, he would still gain the half-year or so he was so understandably eager to gain when he was in prison. In sum, the recordings disclosed a man who was not likely to surrender meekly to fate. His staunch

---

**6.** He also bears the additional risk of state prosecutions for murder, a crime for which there is no statute of limitations and, depending on the nature of the federal charges and their disposition, the state statute which precludes state prosecutions for acts prosecuted by another sovereign might not apply. *Ill. Rev.Stat.* 720 § 5/3–4.

self-interest is relevant to the last factor I must consider.

### 4. The nature and seriousness of the danger to any person or the community that would be posed by Defendant's release

I find ample evidence of these risks both in the Government's proffers (at and before the detention hearing) and in reported cases (*see, e.g.,* *Zizzo* and *Rainone*). First, the prosecution has proven by clear and convincing evidence that the criminal organization at the heart of the charged offenses is one of long duration. Second, by definition, the organization's members are all criminals. The ties of moral obligation and loyalty are likely to be weak among the members of a criminal organization. Because the legal remedies for protecting a business's secrets and assets that are employed by legitimate businesses are not available to criminal organizations, these organizations must adopt (and in the past, have adopted) alternative methods of self-protection. Common methods, particularly in the context of defending against criminal charges based on the assistance of turncoat members, include murder, kidnapping, and the intimidation of witnesses to obstruct justice.

The prosecution has shown by clear and convincing evidence that there is a serious risk Defendant will attempt to obstruct justice and prevent the testimony of Nicholas Calabrese and other potential witnesses through intimidation, injury, or bribery. Defendant was willing to sanction the murder of his brother for cooperating with law enforcement. He was also willing to align his son with an illegal sports book that was associated with a person who participated, according to Defendant, in a murder. He scorned his brother's failure to kill a target and for failing to kill a fellow assassin who had refused to kill the targeted individual. Defendant perceives himself, as he made clear in several statements, to be a loyal member of an organization that engages in criminal acts and whose members obey the orders of their superiors under pain of death. If released, there is a distinct possibility that he will attempt to deprive the prosecution of as many living witnesses as he can to comply with such orders.[7] I find that none of the suggested conditions for release, stringent as they may be, could reasonably ensure against attempts to obstruct justice and tamper with witnesses.

I therefore enter the following Order:

Frank Calabrese, Sr. shall be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. In custody, he shall be afforded reasonable opportunity for private consultation with counsel. I further direct that, upon order of a court of the United States or request of an attorney for the Government, the person in charge of the corrections facility in which Frank Calabrese, Sr. is confined shall deliver him to a United States Marshal for the purpose of appearing in connection with court proceedings.

---

7. The indictment alleges at least two murders that were perpetrated because the victims performed their assigned criminal tasks poorly. Evidence suggests that Defendant is blamed by some co-defendants, in part or whole, for this indictment. Since this evidence was elicited by the Defendant and not challenged by the prosecution, I find that there is a further reason to deny bond: to ensure the presence of Defendant at trial. Even if I found, in spite of the other evidence at this hearing, that Defendant truly wanted to and intended to appear, the fact remains that he, too, is a target.